ALBANY,
August, 1810.

SIKES
v.
RANSOM.

---

## SIKES *against* RANSOM.

THIS was an application to the court, for a *mandamus* to the judges of the *Otsego* common pleas, to amend a bill of exceptions, according to the truth of the case.

*Per Curiam.* The application is entirely new; and it becomes a question whether this court can interfere when a court below refuses to seal a bill of exceptions. The books do not furnish much light on this subject. The practice, in *England,* under the statute of *Westm.* 2. (of which ours is a copy) seems to be, to apply to the court of chancery, for a writ grounded upon the statute. The form of the writ is to be found in the *Register;* (182. *a.*) and Lord *Redesdale,* in the case of *Lessee of Lawlor* v. *Murray,* (1 *Sch. and Lefroy,* 75.) calls it a mandatory writ, " a sort of prerogative writ;" that the judges to whom it is directed, must obey the writ, by sealing the exceptions, or make a special return to the king in chancery. The writ, after reciting the complaint, commands the judges *si ita est, tunc sigilla vestra, &c. et hoc sub periculo quod incumbit nullatenus omittatis.* What that peril is, within the purview of the writ, does not distinctly

*This court will grant a mandamus directed to the judges of a court of common pleas, commanding them to seal a bill of exceptions, or to amend it according to the truth of the case. Regularly, a bill of exceptions ought to be tendered, at the trial, and the court is not bound to seal it, at the subsequent term. Where a bill of exceptions was tendered to a court of C. P. in January term, and application was made in June term to amend it, and the court refused; this court denied a motion for a mandamus.*

appear; though the books speak of an action on the statute, at the instance of the party aggrieved. (*Show. P. C.* 117.) In the *Rioter's* case, (1 *Vern.* 175.) a precedent was produced, where, in a like case, such a mandatory writ had issued out of chancery, to the judge of the sheriff's court in *London*. But, though no instance appears, of such a writ issuing out of the *K. B.* when an inferior court refused to seal a bill of exceptions, there is no case denying to that court the power to award the writ. It is, in effect, a writ of *mandamus*, and it is so termed in the books. (*Bac. Abr.* tit. *Mandamus*, E.) A *mandamus* is a prerogative writ. It ought to be used where the law has established no specific remedy; and where, in justice and good government, there ought to be one. Why cannot the writ in question issue from this court? We have the general superintendance of all inferior courts; and are bound to enforce obedience to the statutes, and to oblige subordinate courts and magistrates to do those legal acts which it is their duty to do. The *mandamus*, as was observed in the case of *The King* v. *Baker*, (3 *Burr.* 1265.) has, within the last century, been liberally interposed, for the benefit of the subject, and the advancement of justice. There is no reason why the awarding of this particular writ does not fall within the jurisdiction of this court, or why it should be exclusively confined to the court of chancery. It would be equally in the alternative, *quod si ita est*, to seal the bill of exceptions; and if it be returned *quod non ita est*, the answer would be sufficient; and the party, if aggrieved, would be put to his action for a false return. If complaint should be made against this court, or one of its judges, for refusing to seal a bill of exceptions, then the writ must, *ex necessitate*, come from chancery, if any where; but in no other case can it be indispensable.

But, though the court are of opinion that they have jurisdiction in this case; yet there does not appear to be sufficient ground disclosed to justify their interference,

The bill was tendered and sealed at the last *January*
term of the *Otsego* common pleas ; and, at the last *June*
term, the judges were asked to amend the bill, accord-
ing to a statement of facts presented. Some of the
judges recollected the facts ; some of them did not. Re-
gularly, a bill of exceptions ought to be tendered at the
trial, though the practice is, to allow the counsel to ten-
der it afterwards. (1 *Bos. & Pull.* 32.)  But according
to the decision in *Wright* v. *Sharp*, (1 *Salk.* 288.) the
courts are not bound to seal a bill of exceptions tender-
ed at the succeeding term of the court ; for, as Lord *Holt*
observed, " if this practice should prevail, the judge
would be in a strange condition. He forgets the excep-
tion, and refuses to sign the bill, so an action must be
brought."  The counsel should have attended to the
bill, and have seen that it was correct, at the *January*
term. It would be a dangerous precedent to take com-
pulsory measures against the judges, and make them an-
swer, at their peril, to a statement of facts tendered to
them at a subsequent term.

The motion is, therefore, denied.

Motion denied.