## Case No. 15,469.

### UNITED STATES v. JARVIS.

[3 Woodb. & M. 217.] [1]

Circuit Court, D. Maine. Oct. Term, 1847.

WRITS OF ERROR — BILLS OF EXCEPTION — FORM AND VERIFICATION—WAIVER OF EXCEPTIONS—AMENDMENTS.

1. Where a statement is made and signed by the judge, as to the facts in the case and the rulings on them, it may be sufficient evidence of their truth. But this does not amount to a bill of exceptions, so that a writ of error lies, unless it appears that the party objected at the trial to the rulings, and wished the exceptions noted and reduced to a bill. It must appear, further, that the exceptions were persisted in.

[Cited in Marine Stave Co. v. Herreshoff Manuf'g Co., 32 Fed. 824.]

[Cited in Kearney v. Snodgrass (Or.) 7 Pac. 310.]

2. The seal to a statement, verifying all the papers sent up, may be sufficient, though not in the usual place for a bill of exceptions

3. The proper form for a bill of exceptions is that in use under the statute of Westminster the second, and not of a case saved by one judge for the whole court.

[4. Cited in Walsh v. U. S., Case No. 17,116, and Tufts v. Tufts, Id. 14,233, to the point that amendments are frequently made after judgment, and writs of error are brought to reverse them.]

[Error to the district court of the United States for the district of Maine.]

This was a writ of error to reverse a judgment which had been rendered in the district court in favor of the respondent, on the 1st day of December, 1846. [Case No. 15,468.] The original action in which that judgment was rendered, was one of debt on an official bond given by the defendant [Leonard Jarvis], to secure his fidelity as navy agent, at the naval station in Charlestown, Massachusetts. The breach assigned was not accounting for $1,700 of money, and on this an issue was joined. It appears in the record, not from any bill of exceptions in the usual form, but from a statement of the judge in the following words, what took place at the trial; and this statement was relied on by the United States as a sufficient bill of exceptions:

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

"United States District Court. District of Maine, December Term, 1846.

"This was an action of debt on the official bond of the defendant, as navy agent for Boston and Charlestown, for a balance of seven hundred fifteen dollars ninety-seven cents, alleged to be due from him on the final settlement of his accounts. The writ and pleadings may be referred to by either party. The defendant was appointed navy agent in April, 1838, to hold the office during the pleasure of the president, for a time not exceeding four years. The compensation allowed for his services was one per cent. on the amount of his disbursements, but not to exceed in the whole, the sum of two thousand dollars per annum. Defendant was removed from office on the 27th day of September, A. D. 1841, six months and three days before the term of four years expired; and the first notice he had of his removal or of an intimation to remove him before the expiration of the term, was, by the appointment of a successor. On the final settlement of his accounts by the accounting officers, there was found to be a balance due the United States of $715.97, which balance was made of the following items, viz:—

| | | |
|---|---:|---:|
| To this sum disallowed in settlement, to 27th Sept. 1841, being on vouchers 486, 487 and 488, for clerk hire and office allowances, from 27th to 30th Sept. 1841, inclusive, (4 days,) the same being charged by and allowed to J. V. Browne, who was then the navy agent............. | 26 | 29 |
| To this sum disallowed in this settlement, being a charge for clerk hire beyond the time that Mr. Jarvis was the navy agent .................. | 200 | 00 |
| To this sum disallowed in this settlement, being a charge for office rent beyond the time that Mr. Jarvis was the navy agent .................. | 37 | 50 |
| To this sum disallowed in this settlement, being a charge for commissions beyond $2,000 a year, and being one per cent. on $45,218.59 paid to the heirs of John Harris awarded to them by the United States..... | 452 | 18 |
| | $715 | 97 |

"The defendant claimed to be allowed the above sum of $452.18, as commissions, at one per cent., on $45,218.59, paid to the heirs of John Harris for certain lands purchased by the secretary of the navy for the navy yard, as being an extra service, not coming within the regular duties of the navy agent, and for which he claimed to be entitled to a separate and additional compensation. And he also claimed $26.29, being the amount of several small items for office rent and charges for the remainder of the quarter ending October 1; and also $37.50 on one quarter's office rent from October 1st to December 31, 1841, after his removal from office.

"The defendant hired his office by a parol lease (and not having given seasonable notice of his intention to surrender it before the expiration of the quarter ending in October, by the local law of Massachusetts, he

became liable for an additional quarter's rent.) It was paid by him, and the receipt is in the case. He also claimed $200 for one quarter additional clerk hire. His clerk was hired for a year, terminating with April 1st, 1842, when the defendant's appointment would expire by its limitation. The clerk being hired for the year claimed his salary under the contract, but compromised for one quarter's salary instead of the whole, which was half a year. The amount claimed for office rent and clerk hire was the same as had been allowed from quarter to quarter in his previous settlement.

"The transcripts of account filed in the case and used at the trial in the district court, may be referred to by either party.

"Whereupon the district judge instructed the jury as follows:—

" 'On the whole, the view that I have of the law is this: the principal may at any time revoke and withdraw the power of an agent, at his pleasure, and without notice. This is a right that is fully reserved to him by the law. But if the agent has entered on the business of the agency, and has fairly, in the ordinary course of business, and in good faith, entered into any engagements or come under any liabilities in the prosecution of the proper business of the principal, before notice of the revocation of agency, the principal will be bound to indemnify him unless the agent had given just cause for such revocation. In the same manner the agent may at any time renounce the agency, but then he is bound to give the principal seasonable notice of his intention, beforehand, to enable him to procure another agent; and if he does not, he will be bound to indemnify the principal for any loss he may sustain. And the same principles hold whether the government and an individual are parties, or both parties are private persons.

" 'If the law be as it has been stated, the determination of this cause depends on a question of fact which properly belongs to the jury to decide. If the jury are of the opinion that the defendant, in engaging his office and his clerk on the terms he did, acted in good faith, according to the usual course of business, and that the conditions as to the time on which they were made, were reasonable and proper, and such as a faithful and prudent agent would make, acting for the benefit and interest of his principal, the jury ought to find for the defendant. They were liabilities incurred solely in the business of the plaintiffs, and for their benefit, from which the defendant himself derived no advantage, and for which the plaintiffs are bound to indemnify him.

" 'The defendant having actually paid these sums, under the statute of the United States, of March 3, 1797, c. 74 [1 Story's Laws, 464; 1 Stat. 512, c. 20], they constitute an equitable set-off against the plaintiff's demand. But if under the circumstances of this case, the defendant having been appointed to his agency for four years, of which six months remained, but liable to be removed at any time at will, before the expiration of the four years, the jury are of the opinion that he ought, as a prudent agent, to have engaged his office and also his clerk, from day to day, or week to week, or what would come to the same thing, merely at will, with the liberty of surrendering the office, and of discharging his clerk at any time, without notice; and consequently liable at any time to be turned out of office, and to be left by his clerk without notice, then you will find your verdict for the United States, for the amount of these items, with interest from the time when they should have been paid.'

"The jury returned a verdict for the plaintiffs, in the sum of $532.26, that being the amount retained by Jarvis, the defendant, for commissions at one per cent. for disbursements to Harris's heirs, together with interest on said sum from date of writ; and the jury allowed the defendant to retain the sum by him claimed as clerk hire and office rent.

"I certify that the foregoing is a correct report of the case. and of my instructions to the jury.　　　　　Ashur Ware."

The plaintiffs in error sought to have the judgment reversed, on the ground that the directions of the judge in respect to the allowances of commissions and salary of clerk, were erroneous in point of law; contending that no act of congress, nor any sound legal principle justified these allowances.

The respondent objected, (1st,) that these questions were not duly raised on the record by a proper bill of exceptions, and (2d,) if they were, that the decision by the judge below was correct.

Haines, U. S. Dist. Atty.
Mr. Preble for respondent.

WOODBURY, Circuit Justice. The objection to the consideration of the question on the merits in this case, whether the ruling of the judge was correct or not, must, I fear, prevail, under the state in which we find this record. The report at the end of the record made and signed by the judge, is not in the usual form of a bill of exceptions, elsewhere; though it is understood to have been at times, for some years, employed in this district. But the practice here has not been uniform, as may be seen in the original record in Trafton v. U. S. [Case No. 14,135]. The form there as in England, is, after stating what was ruled by the judge, to say, this was excepted to by one of the parties; and then for the judge to affix his seal, as well as signature, in order to verify the fact that the exception was made and is truly set out. See St. Westm. II. which is 13 Edw. Pl., requiring it; [Jones v. Insurance Co. of North America] 4 Dall. [4 U. S.] 249; 1 Bac. Abr. "Bill of Exceptions." 517; Steph. Pl. 111; 5 Term R. 125; 5 East, 49; 1 Bos. & P., 32; Lil. Ent.

275, 323; 3 Burrows, 1692; Davis v. Wilson. 2 Har. & J. 345. In the Massachusetts district, if not in all others in this circuit, the form of a bill of exceptions in use, is substantially as in England. It is signed and sealed separately, and in its body sets out that the "counsel at the trial excepted and prayed this, his bill of exceptions, to be signed by the said judge, which being found to be true, the said judge hath, at the request of the said counsel," put his seal, &c. U. S. v. Kimball [Case No. 15,530], May term, 1844. Nor is the form here that which is in use when cases are carried to the supreme court of the United States. [Walton v. U. S.] 9 Wheat. [22 U. S.] 651.

The present seems to be rather a form of reporting a case by the judge who tries it, in order to bring it for consideration more deliberately afterwards, either before himself or a full court. No act of congress has prescribed or permitted any new form for a bill of exceptions; and as the constitution in its seventh amendment seems expressly to require, in a case like this, that no fact shall be "otherwise re-examined in any court of the United States than according to the rules of the common lay," so it is reasonably to be concluded, that no point of law should be, unless at least some act of congress justifies it. The judiciary act (section 22) permits a re-examination by writ of error. 1 Stat. 84. But what can or cannot be reached and considered under a writ of error is left to be settled as at common law. Conk. Prac. 68; U. S. v. Wonson [Case No. 16,750]; McLellan v. U. S. [Id. 8,895].

I do not think it material, however, in what part of the record the exceptions are set out, or the signature or seal is affixed, if they only appear, and so appear as to cover and authenticate the exceptions. Taylor v. Willans, 2 Barn. & Adol. 846. And if no seal be affixed, perhaps it can be cured by leave to put it to the exceptions afterwards; and the exceptions themselves, if made at the trial, may be completed afterwards on leave. [Walton v. U. S.] 9 Wheat. [22 U. S.] 651; U. S. v. Gibert [Case No. 15,204]; 6 Wend. 268; 1 J. J. Marsh. 58; 9 Conn. 545; 5 N. H. 336; 4 Mass. 507; 2 Dowl. (N. S.) 335. But unless these are done before judgment, and appear in the record itself before the writ of error is sued out, it will be difficult on principle to sustain the writ.

The liberality which prevails in allowing amendments on writs of error, is rather in these writs themselves than in the proceedings they are brought to reverse, though at times amendments in them also are allowed. Conk. Prac. 441; [Mossman v. Higginson] 4 Dall. [4 U. S.] 12; [Blackwell v. Patten] 7 Cranch [11 U. S.] 277. Thus, in some states amendments are allowed in bills of exceptions so as to conform to the truth. 7 Cow. 102; 5 N. H. 336; 11 Adol. & E. 1000; 3 Perry & D. 539. But here, though no seal is affixed to the signature at the end of his report concerning what took place, I think that omission can be considered as cured by his signature and seal in another part of the record to a statement that he sends "the record and process in the suit aforesaid, with all things concerning them." This is broad enough to cover the report, and without any unusual stretch in construction, may be considered as a verification of the truth of that report by his seal no less than by his signature. But there is a difficulty not cured by this. It is the omission in the report itself to state that his ruling at the trial was then and there excepted to by the present plaintiffs in error. The exceptions must, in fact, be made then. 6 Johns. 279; 9 Johns. 345; 5 N. H. 336; 1 T. B. Mon. 216; Ex parte Bradstreet, 4 Pet. [29 U. S.] 102; 5 Watts, 69, 677; 6 J. J. Marsh. 247. And it must so appear in the record. State v. Lord, 5 N. H. 336. This is deemed vital in order to make the proper bill of exceptions. Brown v. Clark, 4 How. [45 U. S.] 15; [Ex parte Bradstreet] 4 Pet. [29 U. S.] 102. The very expression itself, being a "bill of exceptions," shows that it must contain exceptions. And unless set out in writing as exceptions, it cannot be helped by parol evidence, showing that they were so intended, or by a subsequent bill signed. 3 A. K. Marsh. 360; Spaulding v. Alford, 1 Pick. 37; Pendleton v. U. S. [Case No. 10,924]; 5 Vt. 73, 218; 7 Vt. 223.

It is not enough for it to appear that objections were made, but they must be enumerated specially, and such only can be considered as exceptions. Dunlop v. Munroe, 7 Cranch [11 U. S.] 270. They must not only have been made, but not waived. They must be persisted in as exceptions. [Walton v. U. S.] 9 Wheat. [22 U. S.] 657; 11 Price, 110; 1 Bing. 17. The form in England is: "Wherefore, the said counsel for, and on behalf of the said plaintiff, did allege their exception aforesaid, to the opinion of the said justice, and require," &c. Lil. Ent. 252. It is believed to be thus defective in substance as well as in form, when closely analyzed. Here it does not appear in the report and record that objections were made at all, much less that they were persisted in with a view to obtain on them the opinion of a higher court through a bill of exceptions and writ of error. And though this court, from all the circumstances of the case and the ruling, might be satisfied that exceptions were made and persisted in, yet this is not in law sufficient, unless, as already shown, the court finds the exceptions expressly stated in the record to have been made and allowed. The exceptions, also, are the act of a party, and not of a judge; and they must, therefore, not only appear, but appear to have been made by one of the parties. Thus in Lilly, 275, "the same N. D. required of the same justices" to sign and seal the exceptions. Bratton v. Mitchell, 5 Watts, 69.

Though satisfied in this instance, that the course pursued did not originate with the

present judge or attorney in this district; and that holding it to be invalid will conflict with long usages in this district, and may endanger some other writs of error; yet I do not feel justified in sustaining it, when the respondent does not choose to waive objection to the defects. Such a waiver had doubtless occurred heretofore, in other cases, by not discovering it, or not wishing to rely on it when discovered. It may happen hereafter. But when it does not, as here, the public or individuals are not likely to suffer much by the decision of an intelligent district judge, standing as evidence of what the law of the case is, and which is the only consequence of not sustaining the writ. The omission here is so great, neither stating who wished the report of his charge to be drawn up, nor why; or that any exception whatever, was taken to it at the trial; that it does not seem possible to sustain it under the act of congress, or any common law analogy.

This conclusion precludes any inquiry of mine into the merits of the ruling, however a decision on them by this court may be desirable to the government. It would be travelling out of the record, and also in a way to prejudge some similar question that may hereafter arise between them or other parties, in such way as to require and justify a final decision, and that by other judges, in this or other circuits; and whose views it would not be decorous for me to forestall, when the point is not directly before me. The writ of error must, therefore, be dismissed.