THE STATE *Ex Rel.* GILBERT PILLSBURY AND OTHERS *vs.* THE ACTING BOARD OF ALDERMEN OF THE CITY OF CHARLESTON.

The 5th Section of the Act to provide for the election of the officers of the incorporated cities and towns of the State, &c., ratified September 25th, 1868, providing that "the Managers of elections shall decide contested cases, subject to the ultimate decision of the Boards of Aldermen or Wardens, when organized, except when the election of a majority of the persons voted for is contested, or the Managers are charged with illegal conduct, in which case the returns, together with the ballots, shall be examined, and the case investigated, by the acting Board of Aldermen, who shall declare the election, and their decision shall be binding upon all parties," does not authorize the acting Board of Aldermen, in a case coming properly before it, to adjudge the election to be illegal and void. Its authority is limited to an examination of the returns, together with the ballots, and a declaration of the results of the election.

The former election laws of the State, giving the Managers power to determine the validity of elections, do not enlarge the powers conferred upon the acting Board of Aldermen by said Section.

Powers granted by a statute cannot be enlarged by implication so as to include powers of an entirely different nature, as, for instance, judicial powers, where only ministerial are granted.

Where, upon an application to the Supreme Court for a peremptory writ of *mandamus* to compel the acting Board of Aldermen to declare an election under said Section, the return to the alternative writ does not show that no election was held, the Court has no power to determine as matter of fact the validity of the election.

An alternative writ of *mandamus* may be amended so as to preserve the symmetry of, or make it conform to, the proceedings.

An alternative writ of *mandamus* commanded the respondents to " declare said election, and allow said petitioners to enter upon their several and respective offices," or to appear and show cause, &c. *Held,* That the writ might be amended by striking out the words "and allow said petitioners to enter upon their several and respective offices."

This was an application to the Supreme Court for a writ of *mandamus.*

Columbia, November and December, 1868.

The petition for the writ is as follows :

" Your petitioners, Gilbert Pillsbury, W. R. H. Hampton, Malcolm Brown, E. W. M. Mackey, Thomas R. Small, James F. Green, Thomas J. Mackey, Philip M. Thorn, David Barrow, G. I. Cunningham and M. H. Collins, respectfully represent and state to the .Court:

" That, pursuant to an Act entitled ' An Act to provide for the election of the officers of the incorporated cities and towns in the State of South Carolina,' passed the twenty-fifth day of September, A. D. 1868, an election was held in the incorporated city of Charleston, in said State, on the tenth day of November, A. D. 1868.

" That, on the day succeeding such election, within the corporate limits of said city of Charleston, the several Boards of Managers of Elections within and for said city met at ten o'clock A. M., and proceeded to count the votes, under oath, cast in said election, stating the whole number of votes cast for each candidate or person voted for, and did transmit their several reports of the same, in sealed envelopes, to the acting Mayor of the said city ; that said Mayor did open the reports of said Managers, and announce and publish the whole number of votes cast, and the whole number cast for each candidate, whereby it appeared that Gilbert Pillsbury, one of your petitioners, received the largest number of legal votes for the office of Mayor of said city, and that James F. Green, one of your petitioners, and J. D. Geddings, received the largest number of legal votes, respectively, for the offices of Aldermen for Ward One of said city; that E. W. M. Mackey, one of your petitioners, and William McKinlay, received the largest number of legal votes, respectively, for the offices of Aldermen for Ward Two of said city; that Thomas J. Mackey and David Barrow, of your petitioners, and Robert Howard, respectively, received the largest number or legal votes for the offices of Aldermen for Ward Three of said city ; that G. I. Cunningham and W. R. H. Hampton, of your petitioners, and L. T. Potter, Charles Voigt and Richard Holloway, received the largest number of legal votes, respectively, for the offices of Aldermen for Ward Four of said city ; that Philip M. Thorn, one of your petitioners, and L. F. Wall, received the largest number of legal votes, respectively, for the offices of Aldermen for Ward Five or said city; that M. H. Collins and Malcolm Brown, of your petitioners, received the largest number of legal votes, respectively, for the offices of Aldermen for Ward Six of said city; that E. P. Wall

received the largest number of legal votes for the office of Alderman for Ward Seven of said city; and that Thomas R. Small, one of your petitioners, received the largest number of legal votes for the office of Alderman for Ward Eight of said city; and each and all of said persons, as aforesaid, were duly elected to the several and respective offices aforesaid.

"Your petitioners further represent that the election of a majority of the persons voted for in said election was contested, whereupon the returns, together with the ballots, were examined, and the case investigated by the acting Board of Aldermen, who, thereupon, did declare as follows, to-wit: 'The said Board do declare that there has been no legal, valid election, and that no persons have been duly elected to the offices of Mayor and Aldermen of the city of Charleston at said election.'

"Your petitioners further represent that said acting Board of Aldermen had no authority, in law, to declare that there had been ' no legal, valid election, and that no persons had been duly elected to the offices of Mayor and Aldermen of the city of Charleston,' as aforesaid, but should have declared, upon the returns aforesaid, who had received the highest number of legal votes, and thereby were duly elected to the several offices.

"Your petitioners further represent that, on the 16th day of November, A. D. 1868, your petitioners made formal demand that their election be declared, according to law, and they be allowed to qualify and enter upon the duties of their said offices, as by law they were entitled to do; but your petitioners state that said acting Board of Aldermen, disregarding the just demand of your petitioners, afterwards, to-wit: on the sixteenth day of November, A. D. 1868, did utterly neglect and refuse, and still do neglect and refuse, to declare said election, and allow your petitioners to qualify and enter upon their said offices, as, by law, they ought to have done, and to do; and as, in fact and in law, they had and have power to do.

"And your petitioners further state that they are entirely without remedy in the premises, unless it be afforded by the interposition of this honorable Court by their writ of *mandamus;* and they therefore pray that a writ of *mandamus* may be issued against the said acting Board of Aldermen of the said city of Charleston, commanding them to declare said election, and allow your petitioners to enter upon their said several and respective offices; and that such other order may be had in the premises as justice may require."

The petition was verified by the oath of the petitioners, and, on the 4th December, 1868, an alternative writ of *mandamus* was issued, under the seal of the Supreme Court, and attested by the Clerk. This writ recited the statements of the petition, and commanded the acting Board of Aldermen of the city of Charleston "that you declare said election, and allow said petitioners to enter upon their said several and respective offices," &c., "or that you appear," &c., "to show cause," &c.

The return of the acting Board of Aldermen is as follows:

"The acting Mayor and acting Board of Aldermen of the city of Charleston, upon whom have been served copies of a writ of *mandamus* in this case, and whose names are subscribed hereto, to wit: George W. Clark, acting Mayor, and J. D. Geddings, L. T. Potter, Alexander Lindstrom, R. E. Dereef, Walter Cade, H. B. Olney, John H. Honour, William G. Whilden, C. Voigt, A. S. Marshall and H. Judge Moore, acting Aldermen of the city of Charleston, in answer to said writ, do hereby certify, and return unto the Supreme Court of the State of South Carolina, under whose seal said writ was issued:

"That, on the tenth day of November, A. D. 1868, polls were opened and votes were received in the city of Charleston, by the Managers of Election, for Mayor and Aldermen of said city, under the orders of His Excellency Governor Scott, as directed by 'An Act to provide for the election of the officers of the incorporated cities and towns in the State of South Carolina,' passed the 25th day of September, 1868. That, on the day after the election, and from time to time subsequently, certain papers, purporting to be returns of Managers, were handed to the Mayor. That some were in sealed envelopes, and some were not; and that, on the day after the election, and before all the said papers, purporting to be returns of Managers, were handed in to the Mayor, a written paper, signed by numerous citizens, was served upon the Mayor, notifying him that the election of a majority of the persons voted for was contested, and that the Managers of Election were charged with illegal conduct; and praying that the returns, together with the ballots, be examined, and the case investigated by the acting Board of Aldermen, and that a time and place be appointed for the production of the proofs.

"And the respondents do further return and certify, that the Mayor did not open the reports of said Managers, and did not

announce and publish the whole number of votes cast, and the whole number cast for each candidate; but, on the contrary, the Mayor, upon the reception of the aforesaid paper, notifying him of a contest of the election of a majority of the persons voted for, and of the charge of illegal conduct against the Managers, did forthwith convene the acting Board of Aldermen of the city of Charleston, and did lay before them the papers purporting to be the returns of the Managers, and the boxes, together with the ballots, that had been placed, in his charge. That the said acting Board of Aldermen did consist of the Mayor, George W. Clark, and of Aldermen Geddings, Potter, Cunningham, Lindstrom, Dereef, Wall, Cade, Olney, Honour, Whilden, Voigt, Howard, McKinlay, Marshall and Moore; that Alderman Parker had vacated his seat by accepting the disqualifying office of State Treasurer; that Alderman Adams had departed the State; and that Alderman Weston was *non compos mentis.* That the acting Board of Aldermen, consisting of the Mayor and said Aldermen, duly organized themselves on the 14th day of November, A. D. 1868, adopted rules for their government in the conduct of the case, and proceeded, in accordance with the directions of the Act of Assembly aforesaid, to 'examine the returns, together with the ballots,' and to 'investigate the case,' by the examination of witnesses, the taking of testimony, and the hearing of argument from counsel for claimants and contestants.

"That the investigation and hearing were continued until the 28th day of November last, when the said acting Board of Aldermen did decide, determine and adjudge, touching the said election, as follows:

"'The election of a majority of the persons voted for at the municipal election of the city of Charleston, held on the second Tuesday of November instant, in pursuance of the Act of Assembly, entitled 'An Act to provide for the election of officers of the incorporated cities and towns in the State of South Carolina,' ratified on the 25th day of September, A. D. 1868, having been contested on the part of sundry citizens and electors, and the Managers of Elections having been charged with illegal conduct, and the acting Board of Aldermen having been duly convened, and having proceeded, in accordance with said Act, to examine the returns, together with the ballots, and to investigate the case, in order to declare the

said election, and to make a decision which shall be binding upon all parties:

" 'The said Board, having made such examination, and investigated the case by taking the testimony of witnesses, thereupon do find that the Managers of Election, in the registration of the voters, failed to require the oath to be taken and subscribed as required by law, and in their qualification and organization as Managers, in the holding and conduct of said election, and in the counting of the votes, and in making the return of said election, did not conform to the requirements of the law in such case made and provided, in essential particulars; that many other irregularities and illegalities occurred in the conduct of said election, in essential particulars; and that ballots, exceeding the majorities claimed for a majority of the persons voted for, have been destroyed and cannot be produced for examination:

" 'Wherefore the said Board do declare that there has been no legal and valid election, and that no persons have been duly elected to the offices of Mayor and Aldermen of the City of Charleston at said election.

" 'George W. Clark, Mayor; J. D. Geddings, Alderman Ward 1 ; L. T. Potter, Alderman Ward 4; Alex. Lindstrom, Alderman Ward 4; R. E. Dereef, Walter Cade, H. B. Olney, Aldermen Ward 6 ; John H. Honour, Alderman Ward 5; William G. Whilden, Alderman Ward 8; C. Voigt, Alderman Ward 4; A. S. Marshall, H. Judge Moore.'

" And the acting Board of Aldermen do further return and certify, that they have examined the returns, together with the ballots, and have investigated the case, and have declared that no persons have been duly elected to the offices of Mayor and Aldermen of the city of Charleston at said election; that their authority in the premises is sole and exclusive, and that their decision is final and binding upon all parties.

" And the said acting Board of Aldermen do further return and certify, that persons, in large numbers, who presented themselves for registration under the Act aforesaid, were not required by the Managers to take the oath prescribed, and had their names recorded without taking the said oath, and subsequently voted at the said election; that no person who so presented himself for registration, and whose name was recorded, and who afterwards voted at said election, did subscribe to the oath required by said Act; that

some of the Managers who were authorized and required to conduct said election were not duly sworn at the time of their original qualification, or at any other time; that the said Managers of Election never did organize as one Board, by the appointing of one of their number as Chairman of the Board, in the manner required by law; that the Managers of said election, as one Board or one body, did not meet at 10 A. M. on the day succeeding the election, at some place within the corporate limits, and did not then and there proceed to count the votes under *oath,* and did not state the whole number of votes cast for each candidate or person voted for, and did not transmit their report of the same in a sealed envelope to the acting Mayor; that no polling-place was held within the territorial limits of Ward No. 8, but the polling-place for Ward No. 8 was held within the territorial limits of Ward No. 6; that ballots, exceeding in number the majorities claimed for a majority of the persons voted for, were destroyed immediately after the counting thereof, and never did come into the possession of the acting Board of Aldermen, and could not be produced for examination; that some of the boxes, containing ballots in large numbers, were left for several days without any official custody, and were not produced until inquiry and search was made for them by the acting Board of Aldermen ; that no poll-books were kept at several of the polling-precincts ; that the Clerks of the Managers, in several Wards, were not duly sworn; that the examination of the returns and ballots showed discrepancies between the number of voters on the poll-lists, and the number of votes returned by the Managers, and the number of ballots produced; that, in Ward No. 1, there were more ballots in the box than persons who voted; and that, in some of the precincts, there were fewer ballots than persons who voted ; and that there were many other irregularities and illegalities in the conduct of the said election, in · divers essential particulars.

"And the said acting Board do further return and certify, that, after the examination of the Managers of Election and of the returns, together with the ballots, they did proceed to hear argument of counsel, and did decide that the election was illegal and void, and that no persons were duly elected to the offices of Mayor and Aldermen of the city of Charleston; and, having so decided, they did not proceed to inquire and ascertain how many persons were allowed to vote who were not entitled to vote, and how many persons entitled to vote were excluded from voting, and how many

persons entitled to vote were prevented from voting by force and fraud, and by officious intermeddling.

"And the acting Board of Aldermen do further certify and return, that Gilbert Pillsbury was not, in fact, duly elected Mayor of the city of Charleston; and that W. R. H. Hampton, Malcolm Brown, E. W. M. Mackey, Thomas R. Small, James F. Green, Thomas J. Mackey, Philip M. Thorn, David Barrow, G. I. Cunningham and M. H. Collins, were not, in fact, duly elected Aldermen of the said city. For these reasons and causes the said respondents say that they cannot declare the persons aforesaid elected to the offices claimed by them respectively, and cannot allow the said persons to enter upon the several and respective offices claimed by them, as commanded in the said writ.

"And these respondents, having fully answered the said writ, and shown cause why they cannot do as commanded them in said writ, pray to be hence dismissed with their reasonable costs and charges in this behalf most wrongfully sustained."

*Chamberlain*, Attorney General, *Corbin*, for petitioners.

*Porter & Conner, Miles*, for respondents.

Jan. 7, 1869. The opinion of the Court was delivered by

WILLARD, A. J. The relators claim to have been elected to fill the respective offices of Mayor and Aldermen of the city of Charleston, at an election held on the 10th day of November last, under the Act "to provide for the election of the officers of the incorporated cities and towns of the State of South Carolina," ratified September 25th, 1868, (Special Session, 1868, p. 108). They allege that said election has been contested, as to a majority of the persons voted for; that thereupon the returns, together with the ballots, were examined, and the case investigated by the respondents, who thereupon did declare as follows: "The said Board do declare that there has been no legal and valid election, and that no persons have been duly elected to the offices of Mayor and Aldermen of the city of Charleston, at said election." Relators claim that, by law, respondents were bound to declare the results of the election, and had no authority to declare it void; that they have demanded of the respondents compliance with their legal duty, which has been refused. They pray a writ of *mandamus* to compel respondents to perform their legal duty in the premises.

An alternative writ issued accordingly, commanding the respondents to declare said election and allow said relators to enter upon their several and respective offices, or that they appear and show cause for their refusal so to do.

Respondents have returned to said writ two grounds of non-compliance therewith. The first is, that, in virtue of authority vested in them by law, as Judges of Election, they have adjudged said election to be illegal and void, and that such decision is final and conclusive and binding on all parties. The second is, that illegalities and informalities were committed at such election, and in the returns thereof, and that fraudulent votes were cast in excess of the majorities appearing in behalf of the relators, and they contend that this Court, if not bound by the decision made by the respondents, must, from the facts, arrive at the same conclusion, namely, that the election is illegal and void.

As to the matters embraced in the *first* ground, the relators have demurred ; and as to the *second* ground, have moved to strike out that portion of the return as immaterial and irrelevant.

The question for decision arises on the construction of the following clause of the 5th Section of the Act above named, viz : " The Managers of Elections shall decide contested cases, subject to the ultimate decision of the Boards of Aldermen or Wardens, when organized, except when the election of a majority of the persons voted for is contested, or the Managers are charged with illegal conduct, in which case the returns, together with the ballots, shall be examined, and the case investigated by the acting Board of Aldermen, who shall *declare the election*, and their decision shall be binding upon all parties." It appears that the election of a majority of the persons voted for was contested, and also that illegal conduct was charged against the Managers.

The question is, whether the determination and decision of the acting Board is in conformity with, and in full discharge of, their duty in the premises.

Two acts are required of them : *First*, To examine the returns and investigate the case. *Second*, To declare the election. The first has been performed, and no question is made about it. The second is the subject of the present contest.

Examining the powers of the respondents by the terms under which they are delegated, and no difficulty, either of construction or interpretation, presents itself.

An election is the joint act of all legally qualified electors choosing to participate in it. It consists of the expression of a choice as to the matter voted upon, which is, in legal consideration, a secret act of the elector, and a declaration of the result of such choice in conformity with the law under which the election is held, which is the act of the officers conducting the election. The officers performing this duty are here termed Managers.

According to the present law, their decisions may be reviewed, in some cases, by the new Board of Aldermen or Wardens; and, in others, before the old Board. In the present case the old Board acts. The declaration pre-supposes a scrutiny of the votes, and is completed by a return setting forth the whole number of votes given for each candidate, and, where there has been a choice, in conformity to law, by furnishing the prevailing candidate with suitable evidence of his election.

The foregoing is the general nature of the duty imposed upon the respondents by the terms of the statute, and, if it is to be regarded as the limit of their powers, it is evident that they have not acted in strict conformity therewith. On the contrary, while admitting the existence of an election, in fact, they refuse to declare the same, alleging, as the ground therefor, that it was illegal and void.

The respondents claim that, by a proper construction of the statute, in connection with the former election laws, it will appear that they have more enlarged powers, and are competent to adjudge the illegality of the election.

It is unquestionably true that, under the former election laws, the Managers of Elections possessed, by the express terms of the law, such powers as are here contended for, but it is not clear how that can assist the respondents, who act under a much more restricted grant of authority. The powers in question are the creatures of the statute, and we are not at liberty to cull from statutes passed at different periods, and under widely varying circumstances, in order to increase their efficiency and symmetry.

If the terms of the statute are to be enlarged, it must be in conformity with the principles governing legal construction, and because something is imported into those terms by a necessary, or, at the least, by a reasonable implication. That which is drawn after the statute by a necessary implication is as much a part of it as that which is expressed in terms. Where a subject-matter is named, all things directly appertaining to it are included by necessary im-

plication. Where an act is required to be performed, whatever constitutes a necessary or ordinary means to its performance is, in like manner, included. The question in all these cases is, not whether the matter of implication will add to the value and efficiency of what is conferred in terms, but whether, without it, the statute will be wholly or in part inoperative. Applying these tests to the case in hand, and we have no difficulty in discovering that the powers granted, and those sought to be added by way of implication, are in their nature different, and no ways connected or dependent, and cannot be united on any principle of necessary implication.

One is administrative and the other judicial, and, therefore, entirely separate and distinct in themselves. Nor does the nature of the duty to be performed demand their conjoint exercise. Whether the election ought or ought not to be held void, there is equal propriety in making its results officially known ; nor can it be perceived how the right to pass judicially upon the question of the legality of the election can furnish any facilities for arriving at an official statement of its results. There is no ground for enlarging the terms of the statute so as to embrace the powers claimed by the respondents, on any idea of a necessary implication, as strenuously contended for on their behalf.

But if not a necessary, may it not be a reasonable implication ? This question opens a wide range of consideration, and enables us to determine whether the enlarged powers contended for are within the spirit and intent of the statute, if not in its terms. It is an obvious rule of construction, that that which is unreasonable in itself cannot become the subject of a reasonable implication. Nothing is more unreasonable than that the acting Board of Aldermen, having an interest in this question, as they retain their seats, in the event the election is held void, should be invested with the power of judicially deciding the case. But it is said that the office of Alderman is one of honor, and not of emolument. A desire for honors may have as corrupting an influence on the judicial mind as that for emoluments. We cannot do violence to the very principle of judicial purity, in order to enlarge the powers of the respondents, or ascribe any such intent to the Legislature.

The powers of the respondents are limited to a legal declaration of the election, and so much of their return as is covered by the demurrer is insufficient as an answer to that part of the mandate of the writ that requires a declaration of the election.

The only view in which the relevancy of the residue of the re-

turn can be supported is, that this Court can, in the present form of proceeding, determine, as matter of fact, the validity of the election. We are satisfied that this question is not properly before us.

If the return had undertaken to show that no election had, in fact, taken place, that would have raised an issue on which their duty to declare the election depended; but the return only goes to the extent of denying the legal validity of the election—a fact altogether unimportant, so far as their duty is concerned.

The respondents may have supposed, from the concluding clause of the command of the alternative writ, which directs the respondents to allow the relators to take possession of the offices to which they make claim, that the entire question of the right of the relators to the offices in question was at issue on this record, and that, therefore, it was necessary to put in issue the validity of the election; but a careful examination of the frame of the writ shows that such issues are not pertinent. The theory of the writ is, that something is lacking to enable the relators to prosecute any claim they may have acquired by the election to the offices, namely, a declaration of the results thereof. Hence the necessity for applying for a mandate to compel the performance of that official act, without which the right to the office is inchoate. That portion of the mandate that relates to the declaration of the election must be regarded as fixing the character of the proceeding, and the issues triable under it, and the residue must be regarded merely as intended to enlarge the scope of the relief, on the contingency of the declaration of the election favorable to the claims of the relators. In this respect the mandate is objectionable, as it seeks to carry the remedial aid of the Court beyond the case made by the pleading.

It is clear that if the case is in a position to enable the Court to ascertain finally the rights of the contestants in respect to the offices, then it would be idle to require a declaration of the election, for nothing would be left dependent on such declaration. But the theory of the writ contradicts such an assumption, and shows that a declaration is necessary, as a condition precedent, to any contest involving the question of right to fill the offices.

That portion of the return covered by the motion to strike out is, therefore, irrelevant to the true issues of the case, and may be disregarded.

It has been argued, in behalf of the respondents, that the peremptory writ must issue in the terms of the alternative or not at all, and that, as it cannot so issue, the proceeding must be quashed. It is

true that the peremptory writ cannot issue in the exact terms of the alternative, as we have already seen. Can it, then, issue at all?

It was held in the *King* vs. *St. Pancreas,* (3 Ad. & Ellis, 535,) and in *Regina* vs. *Tithe Commissioners,* (14 Adol. & El. N. S., 459,) that the peremptory writ must conform exactly to the alternative, and that the Court could not mould the writ, though it may the rule to show cause. This strictness resulted from the notion that this proceeding did not partake of the characteristics of the formal remedies afforded at common law, but was a resort to kingly prerogative because of a failure of justice. This notion has never been received in this country, but the writ of *mandamus* has been treated as forming no exception to the rules governing ordinary remedies.

In the *People* vs. *Thorpe,* (12 Wen., 189,) a peremptory *mandamus* was allowed on a return to a rule to show cause, without waiting to issue an alternative, and the relator was permitted to complete the record by the introduction of an alternative writ *pro forma.*

This is certainly allowing greater latitude than that of an amendment limiting the sphere of the mandate. The liberality with which amendments are allowed is well stated by Judge Earle, in *Bank of Pennsylvania* vs. *Condy,* (1 Hill, 209.) The learned Judge says: " The ancient rigor on the subject of amendments has been greatly abated, as well by the liberal and enlightened practice of the Courts in modern times as by statute. It is the constant practice here to amend proceedings in any period of their progress, to preserve the symmetry, and to make them conformable, if anything appear by which the amendment can be framed. Writs, declarations, judgments and executions are every day amended up to the time of final satisfaction, and there can be no reason why a verdict should not be also." This reasonable practice is applicable to *mandamus.* The objection of the respondents relates to " symmetry " and " conformity " alone, and concerns no substantial right. We find in this case a return and a demurrer, giving a definite mould to the proceeding, and forming ample ground to amend by, and we do not feel at liberty to disregard the just and humane doctrines of amendment now generally prevalent, in order to ingraft upon the practice in this very important department of remedial justice the rigidity practiced in earlier times.

The relators will be permitted to amend their alternative writ in conformity with the foregoing, and, upon such amendment, a per-

emptory *mandamus* will issue, commanding the respondents to declare the election.

*Hoge*, A. J., concurred.

Jan. 7, 1869. Separate opinion of

Moses, C. J. While I concur in the result of the opinion pronounced by the learned Associate, I do not desire to be understood as committed to all which it contains, as leading to the conclusion to which the Court has arrived.

If I regarded the statute conferring on the Board of Aldermen the power " to examine the returns and the ballots, and investigate the case," as imposing the authority " to hear and determine," I would not feel warranted in granting the *mandamus* merely because they had failed to declare the election.

The obligation to " hear and determine" involves the right to consider and dispose of by judgment. The determination consequent on the hearing is to be carried out by judgment, which implies decision.

In the *King* vs. *Loxdale et al.*, 1 Burr., 447, Lord Mansfield said : " It is a rule, in the construction of statutes, that all which relate to the same subject, notwithstanding some of them may be expired or are not referred to, must be taken to be one system, and construed consistently."

The learned counsel for the respondents recognized the force of this rule when he remarked, " that the question is to be decided by the law and custom of South Carolina."

Are the powers, however, of the Board of Aldermen, under the Act of 1868, as general and extensive as those of the Managers of Elections under the Acts of 1808, 1815, 1839 and 1846, so that this rule becomes imperative as a guide? If, on the contrary, they are more restricted, then, following the reason on which it is founded, may we not conclude that the Legislature proposed and intended a different and more limited grant than they had theretofore extended to Boards of the like character?

The Acts of 1808 and 1815 authorize the Managers " to hear and determine." Those of 1839 and 1846, " to hear and determine the validity of the election; and their decision shall be final."

With a knowledge of these Acts, the Legislature, in 1868, providing an uniform system for the election of officers of incorporated towns, invested with authority the acting Board of Aldermen,

State *vs.* The Acting Board of Aldermen of Charleston.

where the election of a majority of the persons voted for is con-
tested, or the Managers are charged with illegal conduct, to
examine the ballots and returns, investigate the case, declare the
election; and their decision was to be binding on all parties.

Does this confer upon them *such* judicial power as puts them
beyond the reach of the process of *mandamus ?*

This proposition is plainly and distinctly announced by the re-
turn, and it is due to the respondents that it should be considered.

The received idea at one time was, that the writ would only lie
to command the performance of a ministerial duty, but later cases
have gone further, and it is now the constant practice to grant the
writ to command the performance of any public duty for which
there is no specific remedy.—Tappan, 12, 176.

More especially does this apply in matters enjoined by statute;
and thus, where the Ordinary (an Ecclesiastical Judge) refused
a grant of administration or probate of a will, the King's Bench,
a temporal Court, ordered the writ.—*Anonymous,* 1 Strange, 552;
*King* vs. *Doctor Hay,* 1 Blk. Rep., 648 ; Bacon Abr., *Mandamus,*
D., 434.

And the ruling was followed in *Sikes* vs. *Ransom,* 6 Johns., 279 ;
*State* vs. *Watson,* 2 Speers, 97.

To *what* extent the Court, by this prerogative writ, would at-
tempt to interfere with an inferior jurisdiction, where a judicial
power was to be exercised, it is not necessary now to decide.

In the case of the *Commissioners of the Poor* vs. *Lynah,* 2 McC.,
170, the Court said they would interpose, if there had been an
abuse of discretion ; and this was in regard to a body clothed with
judicial authority in the matter in which they had acted.

Judge Brevard, in the case of *Bruce,* 1 Tr. Con. Rep., 180, re-
ferred to in the argument, said : " But the authority of Managers
is not purely judicial.    Their discretion is limited by legal restraints,
and, being inferior Magistrates of a mixed character, even though
they should confine themselves within the bounds of their jurisdic-
tion, yet they must be subject to the visitorial jurisdiction of the
Court of General Sessions, to regulate and correct them in the ex-
ercise of their discretionary power ;" and he refers to 10 East, 403,
and 7 East, 92.

The mere power *to investigate and declare* an election is not of
such a judicial character as precludes supervision by the writ of
*mandamus.*

The Legislature appears to have had in view all the Acts hereto-

fore passed in relation to Managers of Election, so far as their powers were concerned, and to limit the Board of Aldermen, in the contingencies provided for, to the mere investigation of the contested case and the declaration of the election. This permitted scrutiny, and all that was necessary for the proper execution of the power thus confided. What that declaration should be, depended on the facts elicited in the inquiry; but it is required by the Act, for, otherwise, a party interested could not be placed in the position, which the law concedes to him, to assert, through the Courts, his right to an office.

The declaration may, in the end, be of no value to him; but still, if the Act extends the privilege, it was not competent for the Board to deprive him of it by neglect or refusal to carry out its provisions.

It is made a substantive duty on the part of the Managers; the words were intended to denote something; the language is plain, and has a significance and meaning which the Court is not at liberty to overlook or disregard.

It is said, however, that the writ will not be granted where it must be fruitless, vain, or useless, and that the Court has full discretion in the matter.

It is true that if the writ could have no result, as in *The Queen* vs. *Trustees of Norwich Savings Bank*, 3 A. and E., 729, or where the act to be performed would fail to carry out the purpose of a relator, because it could not be accomplished in time to render it available, the Court would stay its hand. It has not been made to appear that any such obstructions or difficulties prevail in the case before us.

Of all the powers which a Court is called on to exercise, it approaches none of them with more caution and distrust than those which are alleged to be within its mere discretion. Where the law affords fixed principles for guidance, there is less danger of a " false judgment."

Where nothing is to be followed but the suggestions of " legal will," there is a consciousness of a want of safety, because there is then no reliance but on the dictation of mere reason, which would induce a fluctuation and vascillation, inconsistent with public security, and which might entail on the community all the evils which a regulated system of law was intended to prevent.

Where discretion is to be exercised, it must be governed by some admitted and prefixed standard of right. It is true that, where the

end sought is only a private one, or granting the writ would be attended with manifest hardship, there it will be withheld.—*Van Ransaeller* vs. *Sheriff of Albany*, 1 Cowen, 512.

How, in a matter of public concern affecting a large city, can we undertake to say that the relators are not entitled to the remedy which the law provides, to place them in a position in which they may assert their claim to an office ?

The wrong and hardship would be in precluding them from the opportunity of establishing, if they can, a right, from the possession of which they aver they are prevented by the non-performance by the Board of Aldermen of a duty which the law enjoined.