GEORGE MUDGET v. TOWN OF JOHNSON.

*Town Meeting. Warning. Vote. Soldier's Bounty. Quota.*

The defendant town, at a meeting held under a warning containing the following articles: "To see whether the town will vote bounties to supply the quota of the said town under the recent call of the President of the United States for 300,000 men to serve in the war. In case the town shall vote to pay such bounties, to raise and provide means for the same." Voted, "That the selectmen be instructed to borrow a sum not exceeding $3000, for the purpose of paying $300 each to volunteers that may hereafter enlist for the war, under the recent call of the President of the United States, including the one that is understood has enlisted, payment to be made such enlisted men when mustered in to the service of the United States." *Held,* that there is no such difference between the warning and the vote as to render the latter inoperative.

*Held,* that the only discretion left to the selectmen in such vote was as to the amount of money they should borrow, not exceeding $3000; and that the vote was such a general offer as a soldier might comply with, and thereby entitle himself to the benefits of its provisions, either with or without the intervention of a contract between him and the selectmen.

The defendant town, having been notified by the military authorities, previous to the vote in question, to furnish ten men, under the call of October 17, 1863, and having relied and acted upon this notice, the legal rights of the parties in this case, the plaintiff being one of the first to enlist to the credit of said town after said call, are the same as if that number of men at least had been actually due from the town, notwithstanding the selectmen, after the ten men were mustered, and after the plaintiff had enlisted and been mustered to the credit of the town, were notified by the adjutant-general that, prior to the mustering in of the ten men, the town had a surplus credit over previous calls.

The defendants in this case having declined to go to the jury except upon one question, thereby virtually conceded the other facts material to the plaintiff's right of action which the evidence tends to establish.

After the plaintiff had been induced to re-enlist in the field, to the credit of the defendant town, upon the application of the selectmen of said town, made through the plaintiff's father by letter, under the circumstances disclosed in this case, the selectmen could not exclude him from the benefit of the bounty, by subsequently, and before receiving notice of his re-enlistment, filling their quota with other men, at least not till after culpable negligence on the part of the plaintiff in giving notice of his re-enlistment.

ASSUMPSIT. Declaration, common count. Plea, the general issue. Trial by jury, May term, 1869, WILSON, J., presiding.

The plaintiff by leave of the court filed an additional count for the same cause of action, it being for an enlistment by the plaintiff to the credit of the defendant town under a vote of said town, to which the defendant excepted.

On the trial, the plaintiff offered in evidence a certified copy of the record of the warning, and the proceedings of a meeting of

the defendant town held under the same, December 19, 1863, which is as follows :

The following is the warning :

" 1st.        *        *        *        *        *        *        *        *

" 2d.   To see whether the town will vote bounties to supply the quota of the said town under the recent call of the President of the United States for three hundred thousand men to serve in the war.

" 3d.   In case the town shall vote to pay such bounties, to raise and provide means for the same.

" 4th.   To do any other business proper to be done."

The following are the proceedings of the meeting :

        *        *        *        *        *        *        *        *        *        *

" *Voted*, That the selectmen be instructed to borrow a sum not exceeding three thousand dollars for the purpose of paying three hundred dollars each to volunteers that may hereafter enlist for the war, under the recent call of the President of the United States, including the one that is understood has enlisted, payment to be made to such enlisted men when mustered into the service of the United States.

" *Voted*, That the selectmen be authorized and instructed to raise a tax sufficient to meet one-third of the amount to be raised as aforesaid, to be raised on the list of 1863, and the remainder to be raised by tax in two equal instalments on the lists of 1864 and 1865, the first named tax to be raised in the month of January next."

To the admission of said copy of record the defendant objected : *first*, that the vote of the town, as shown by the record, was not authorized by the warning ; *second*, that the vote of the town was not an open vote, but by its terms was limited to the discretion of the selectmen in raising the money ; that the vote left it to the discretion of the selectmen whether to raise any men or not, and that bounties were to be paid to such soldiers only as the selectmen should enlist ; *third*, that the vote taken with the warning could only be construed to authorize payment of bounties to men sufficient to fill the quota of the town under the call of October 17, 1863.   The court overruled these objections and admitted the record as evidence, to which the defendant excepted.

The plaintiff introduced evidence tending to show that his father, by request of one of the selectmen of the defendant town,

wrote the plaintiff, who was then a soldier in the 7th Vermont regiment, at New Iberia, Louisiana, that the said town desired the plaintiff to re-enlist to their credit, and that they were paying $300 bounty; that on the 5th day of January, 1864, the plaintiff, expecting to receive said bounty and relying upon it, enlisted and was mustered in to the credit of said town, and procured the selectmen of said town to be immediately notified by mail of his said re-enlistment and muster, and that he should claim the said bounty, and that it then took twelve days for a letter to reach the said town from where the plaintiff was. The plaintiff also introduced in evidence two copies of records from the adjutant-general's office of this state, one showing that on the 17th day of October, 1863, the said town had a surplus credit of twenty-four men over previous calls; that the quota of the said town under the call of October 17, 1863, was twenty men, and under the call of February 1st, 1864, it was ten men; the other that the plaintiff and five other men re-enlisted and were mustered in to the credit of said town on the 5th of January, 1864; that three men had been mustered prior to that date, and after October 17, 1863, and twenty-five men subsequent thereto, the last enlistment and muster being February 24, 1864.

The defendant's testimony tended to prove that neither of the selectmen of the said town ever requested the father of the plaintiff to write his son as aforesaid, or ever received notice of the plaintiff's re-enlistment; that before the said town meeting of December 19, 1863, the selectmen of the said town were notified by the adjutant-general of this state that the quota of the said town, under the said call of October 17, 1863, was ten men; that they went on and furnished ten men, eight of whom were mustered on the 12th day of January, 1864, and two prior to the plaintiff's re-enlistment, and that after furnishing said men they were notified that, prior to the muster of the said men, the said town had a surplus credit over all previous calls. It appeared from the testimony of the said selectmen that neither of them had, prior to the muster of the said ten men, taken any measures to ascertain whether any soldiers had re-enlisted in the field to the credit of the said town.

The counsel for the defendant town claimed the right to submit only one question to the jury, viz., whether in fact the town had notice of the plaintiff's re-enlistment prior to the muster in of the said ten men. The court refused to submit this question to the jury, and directed a verdict for the plaintiff, to which the defendants excepted.

*Benton & Wilson*, for the defendants.

*Brigham & Waterman*, for the plaintiff.

The opinion of the court was delivered by

PECK, J. The objection to the vote, urged in argument based on a supposed difference between the vote and the warning, is not well founded. The objection urged in argument is that one is more comprehensive than the other in reference to the class of persons to whom bounties are contemplated to be paid. There is no such difference between " bounties to supply the quota of the said town under the recent call of the President of the United States for three hundred thousand men to serve in the war," and " bounties to volunteers that may hereafter enlist for the war, under the recent call of the President of the United States, including the one that is understood has enlisted," as to render the vote inoperative. As to the objection made at the trial that the vote was not an open vote, but limited in the number of men by the discretion of the selectmen in raising the money, we think it is not well taken. That is not the true construction of the vote. Nor is the other objection, that the vote left it to the discretion of the selectmen whether to raise any men or not, and that bounties were to be paid only to such men as the selectmen should enlist, well founded. The warning contained two separate articles, one to see whether the town would vote to pay the bounties; and the other, ".In case the town should vote to pay such bounties, to raise and provide means for the same." This question of construction of the vote arises out of the fact that the town at the meeting disposed of both these articles in one vote, by voting the bounties and instructing the selectmen to borrow a sum not exceeding three thousand dollars for that purpose. The vote specifies the amount of bounty to each volunteer and the time of

payment, that is, three hundred dollars to be paid each enlisted man when mustered into the service. The construction of the vote is, that the only discretion left to the selectmen was as to the amount of money they should borrow, and that was limited to three thousand dollars ; and that as to the payment of bounties it was such a general offer as a soldier might comply with and thereby entitle himself to the benefit of its provisions, either with or without the intervention of a contract with the selectmen. The town had been notified by the military authorities previous to the vote in question to · furnish ten men under the then recent call, although the quota of the town exclusive of surplus credits was more ; and the selectmen then and subsequently, during the time material to the questions in this case, understood that ten men were due, and required of the town to be furnished under that call. The legal rights of these parties are the same as if that number of men at least had been actually due from the town, notwithstanding the selectmen, after that call for ten men was filled and after the plaintiff had enlisted and been mustered in to the credit of the town, were notified by the adjutant-general that prior to the mustering in of the ten men the town had a surplus credit over previous calls. It is not material to the case whether the vote is construed as extending to the whole number of the quota of the town under that call exclusive of surplus credits, or whether the ten men are to be regarded as the quota named in the vote. The other objections to the vote made in the county court are very properly abandoned.

At the close of the evidence, when the court enquired of the defendants' counsel if they claimed there was any thing to be submitted to the jury, they claimed to go to the jury only upon the question whether, in fact, the town had notice of the plaintiff's re-enlistment prior to January 12, 1864, and before the muster in of the ten men which the selectmen procured and caused to be mustered in. The last eight of these ten were mustered in, as the defendants' evidence tended to show, January 12, 1864. The court ruled that there was nothing in this point to be submitted to the jury, and to this the defendants excepted. It is difficult to see where the evidence is to be found in the case which would

justify the finding that the town had notice, in fact, before January 12, 1864, of the plaintiff's enlistment, as he enlisted and was mustered in to the credit of the town January 5, 1864, at New Iberia, Louisiana, and ordinarily it required twelve days for the transmission of a letter, by mail, from there to Johnson, according to the evidence. The notice given by the plaintiff's father, on the receipt of the letter from the plaintiff, was about the 20th of January, 1864. The court, perhaps, might have been justified in declining to submit this question to the jury, upon the ground of the want of evidence tending to prove notice as early as the 12th of January. But we do not put it on that narrow ground, but treat the defendants' request to go to the jury on that question the same as if they had also in terms insisted that the plaintiff could not recover without proof of such notice prior to January 12, 1864, and prior to the mustering in of the men on that day. In this view, if such notice prior to that date was indispensable to the plaintiff's right to recover, there was error; but if such notice, prior to that date, was not indispensable to the plaintiff's right of action, then, if there was evidence tending to prove all the facts necessary to a recovery by the plaintiff, the judgment should be affirmed, notwithstanding there was evidence on the part of the defense tending to disprove some of such necessary facts. The defendants having declined to go to the jury, except upon the question whether there was notice prior to January 12th, virtually concede the other facts material to the plaintiff's right of action which the evidence tends to establish. It appears, from the testimony of one of the selectmen, a witness on the part of the defendants, that in filling that quota, enlisting the ten men, they, by agreement between themselves, acted separately, but ratified what each of them did in recruiting. The evidence of John Mudgett, the father of the plaintiff, as to writing, just before and just after the vote, to the plaintiff, at the request of Merriam, one of the selectmen, to procure the plaintiff to re-enlist to the credit of the defendant town, and proffering him, in behalf of the town, the $300 bounty the town had just voted, and informing him that he wrote at the request of said selectmen; and as to the receipt of the answer from the plaintiff, about the 20th of January, that he

had enlisted to the credit of the town, and immediate notice thereof to Merriam, together with the testimony of the plaintiff as to this correspondence.; the receipt of the letters from his father, and enlisting on the faith of the offer of the bounty and request of the selectmen; and as to his action in giving notice to the town that he had so enlisted to its credit in expectation of the bounty, if true, (and, as before, stated, it must be so taken,) show that the plaintiff enlisted by express procurement of the town, under a promise of the bounty of $300 which he was informed the town had voted. This clearly entitles the plaintiff to recover, unless he has lost this right by the culpable neglect of some duty on his part in relation to giving notice to the town of his enlistment to its credit, to the detriment of the town. In view of the evidence as to the time ordinarily required, at that time, for the transmission of a letter between Johnson and New Iberia, where the plaintiff was, the notice given by the plaintiff's father, on or about the 20th of January, was as soon as could reasonably be expected that a letter, after the vote, could be transmitted from Johnson there, the enlistment accomplished, and notice thereof transmitted back; but it is sufficient to say that the contrary can not, as matter of law, be assumed. It appears, affirmatively, that the selectmen made no effort to ascertain whether any enlistment had been made to the credit of their town. They were bound to know it would take time to communicate with the plaintiff and obtain a reply. After the plaintiff had been thus induced to enlist, and be mustered in to the credit of their town, on their application, they could not exclude him from the benefit of the bounty by subsequently filling their quota with other men, at least not till after a culpable neglect by the plaintiff in giving notice. The fact, therefore, that the selectmen filled their quota on the 12th of January, by causing the last eight men to be mustered in, is no answer to the plaintiff's claim. We find no error in the decision of the county court. In putting the case upon this ground, we do not intend to decide that the plaintiff would not be entitled to recover independent of the agency of the selectmen in procuring the plaintiff's enlistment, nor is it necessary to decide that question.

The judgment of the county court is affirmed.