### LYMAN WAY vs. JAMES WAKEFIELD.

BENNINGTON,
February,
1835.

The rules of court, as to the time of pleading, are matters to be regarded in that court only. Their enforcement or dispensation cannot be assigned for error.

A variance between the declaration before the justice and the new declaration filed in the county court, is no cause of abatement.

Every case passing to the supreme court on exceptions, is to be considered as a proceeding in error, and decided on *inspection of the record*, not in the nature of a motion or petition for new trial. Hence the questions of fact cannot be re-examined, whether found by the jury or the court on an issue of fact.

When a count in *general assumpsit* may be used.

When goods are purchased, and the purchaser reserves to himself the right to pay in certain property, lumber, produce, &c., he may pay within the time without demand or designation, and if not paid, the creditor may sustain an action on book or assumpsit without demand.

This was an action of assumpsit, to which the defendant plead the general issue with notice, with plea in offset, and issue to the court.

The plaintiff, to support his declaration, claimed for the sale of a double harness, sold and delivered by him the plaintiff to the defendant, on or about the 6th October, 1831, and evidence was introduced by plaintiff, tending to show that he, the plaintiff, sold such harness to the defendant on or about that time.

On the part of the defendant, it was claimed that the said harness was paid for at that time, or soon after, by an order drawn by defendant in favor of the plaintiff, for 1426 feet of spruce clapboards, on William Wyman, jr., and that the original agreement of the plaintiff was to take his pay for said harness in boards, and that he accepted the said order therefor.

The only evidence in the case was the testimony of Ebenezer L. Way, a son of the plaintiff, who testified that in October, 1831, the defendant wanted to purchase of plaintiff a double harness, and pay in lumber;—that the witness was directed by his father to do as he thought proper;—that he, the witness, sold the harness to the defendant for the sum of ten dollars, and told him that he would take lumber in pay;—that the defendant wanted the witness to take an order on William Wyman, jr. in payment, which he refused to do;—that defendant was going to the west, and said he would pay for the harness when he came back, if Wyman did not pay the same;—that defendant left an order with witness on Wyman for 1426 feet of clapboards, and requested that the order

BENNINGTON,
*February,*
1835.

Way
*vs.*
Wakefield.

should not be presented to Wyman until after June, when a second payment fell due from Wyman to defendant, and if Wyman did not pay it he would pay for the harness when he came back. The witness further testified, that he presented the order to Wyman, who said he should not pay it, and the first time that the defendant came back, he informed him that Wyman would not pay it.— The witness presented the order in court.

It was also in evidence that Wyman left the state last spring for Ohio. No other evidence was introduced on either side. On this evidence, the court found that the harness was sold to the defendant for the sum of ten dollars, and that the order was not received in payment, but received for the accommodation of the defendant—that the plaintiff might receive the clapboards if Wyman paid for them, and that defendant promised to pay for the same.— Whereupon, they rendered judgment for the plaintiff, to which the defendant excepts, and the cause passed to the supreme court.

*Swift for the defendant.*—I. It is claimed and contended on the part of the defendant, that the plaintiff's suit ought to have been abated on the ground of the variance between the writ and declaration below, and the declaration filed before the county court, and that the court ought not to have rejected the plea, for the reason that it was not filed within the time prescribed by the rules of the county court for filing dilatory pleas. Because,

1st. Such plea is not properly a dilatory plea; and it is considered and believed, that agreeably to the policy of our laws, and the course of judicial proceedings established in this state, such exceptions may at any time, or in any stage of the proceedings, be taken advantage of, even after judgment, and upon writ of error.—Chit. Pl. vol. 1, pp. 438–9, 450. Sw. Dig. vol. 1, p. 606, &c. 3 Bl. Com. 307.

2d. The time fixed by said rules for filing dilatory pleas, is the same for filing new declarations in appealed cases.—See rules 2d and 3d.

3d. The variance in this case is every way material, more especially as the plaintiff's counsel refused to give any specification, or bill of particulars under the general counts in his declaration, although regularly required so to do by defendant's counsel; and the defendant therefore could not know what the plaintiff relied upon to recover, or be prepared for trial, under the declaration; and he had a right, and actually did, in consequence, dismiss his witnesses attending.—Esp. N. P. 249, &c.

II. The testimony adduced in this case, will not sustain a recovery under either of the counts in plaintiff's declaration, showing merely a contract for a double harness, which the defendant contends is not included under the head of either *goods, wares or merchandize*, within the proper technical and legal import and signification of those terms, and the strict limited sense in which the word "*goods*" is there used—(the count for which is the only one, under which it could with any propriety or pretence be embraced.)—Chit. Pl. vol. 2, p. 16, &c.   Esp. N. P. 270.   Stat. 149.   Besides,

III. The contract, as proved, was a special one, and required a special declaration; and besides, the harness was to be paid for in specific collateral property, and not in money, and could not therefore be recovered for under any general counts.—Chit. Pl. vol. 1, p. 326, 333–4, 337, 338–9, 340, 343.   Sw. Dig. vol. 1. p. 574, 684–5, 690, 695–6, 701, 704.   Esp. N. P. 249, 262, 266.   4 East. Rep. 147.

IV. The testimony goes to show, that the plaintiff, or his pretended agent, received an order on Wyman for a quantity of boards, sufficient to answer the contract, although the witness testified that it was not received in payment for the harness; but notwithstanding, it is very evident that it was in some way or on some terms received in payment, and so understood between the parties at the time, from its being drawn for the precise amount, &c.; and we think that extraordinary weight and reliance ought not to be placed upon the testimony of witness, although he stated that he acted merely as agent for his father.   But he was the person who solely made the contract with the defendant, (whose statement in relation thereto, differs very materially and essentially from that of witness,) and who is in every way, except by legal implication, as much interested to sustain his statements, as the defendant, and more so than the plaintiff himself; and receiving his testimony without allowance, is giving to the plaintiff a great advantage, as the defendant is not permitted to substantiate *his* statements by his own oath.   And as it was proved that Wyman was fully responsible at the time when the order was drawn and presented, and had failed whilst it rested in the hands of the plaintiff, and more especially as it was proved that in the mean time, the plaintiff had received of Wyman, boards of like description as specified in the order, (and as Wyman claims to the amount of the order, which he states, that by agreement he had both accepted and paid,) the loss, if any, ought to fall on the plaintiff, (whose has been the *laches*,)

BENNINGTON,
*February*,
1835.

Way
*vs.*
Wakefield.

BENNINGTON,
February,
1835.

Way
vs.
Wakefield,

and the defendant ought not now to be made responsible. It makes no difference in a legal point of view, as suggested by plaintiff's counsel, that the order was not drawn " for value received," &c.— Sw. Dig. 420.  Esp. N. P. 134—do. 66.

V.  It is also contended on the part of the defendant, that as it was proved that the order passed into the hands of the plaintiff, the implication of the law is against him, and he ought not to have been permitted to have shown, *by parol testimony*, any thing variant or contradictory from the expression upon the face of it ; and that by so receiving said order, the plaintiff *at least* undertook a trust for the defendant, which he, the plaintiff, ought to have executed at his own responsibility ; especially as the defendant was removed to a great distance.  But,

VI.  By the terms of the contract, as shown in evidence, the harness was to have been paid for in lumber ; and as there was no time specified for the payment, nor the kind of lumber agreed upon, except as expressed in the order, a particular request and demand of the particular lumber by the plaintiff, and a refusal or neglect *beyond a reasonable time thereafter* of payment by the defendant, was necessary to be shown, to entitle the plaintiff to a suit and recovery therefor ; and as in the present case no such request or demand has been shown or pretended, and not even the notice of non-payment of the order by Wyman, prior to the suit, to authorize the plaintiff to sustain a recovery thereupon, would effectually amount to an authority to any one, at his pleasure, to convert a demand payable in specific collateral articles, into a cash demand, and to superadd moreover, to the other sacrifice, a bill of cost to be paid as a further forfeiture.—Sw. Dig. vol. 1, p. 697–8–9.  Chit. Pl. vol. 1, p. 322, 324.  Esp. N. P. 249, 250, 251.  Big. Dig. 749, A. 5.  1 Sw. Sys. 404.  1 Selw. N. P. 172–3–6–7.

VII.  Rules of law are and ought to be established upon the basis or principles of justice ; and the above, and all other rules, ought so to be construed as to subserve that purpose, &c.

*Sargent for the plaintiff.*—The question in this case seems to be more a question of fact than law ; that is, whether from the evidence, the court found the facts correctly.

It was claimed by defendant, that an order was received by plaintiff, as payment for the property sold ; and on this fact, the issue seems to have been tried.

How could the court have found the fact of payment, when no testimony was introduced by defendant to establish it ?  And the

single witness inquired of; denies it. The testimony, as detailed in the case, presents it in no different light; but shows a refusal to receive the order as payment, but merely to apply the avails as payment in case the order was duly accepted and paid by Wyman.

BENNINGTON,
February,
1835.
Way
vs.
Wakefield.

The defendant took it upon himself to direct when and how the order should be presented to Wyman, which the witness undertook to do, as the friend of, and for the accommodation of the defendant.—2 Vt. Rep. *Goodrich* vs. *Barney.*

The opinion of the court was delivered by

COLLAMER, J.—Much is said by the defendant's counsel in relation to a plea in abatement, which he says was put in at the county court, and being out of time by the rules of that court, was disregarded; the ground of which plea in abatement was a variance between the writ before the justice, and the declaration which was filed in the county court, to which the cause went by appeal. This part of the case does not appear by the exceptions, nor properly could it, as the construction and execution of the rules of practice must be exclusively within the power of the court which makes them ; and a court of error can take no judicial cognizance thereof. It is further to be remarked, that the ground stated by the defendant's counsel as the foundation of his plea in abatement at the county court, was entirely untenable. In England, there is, strictly speaking, no cause before the court until a declaration is filed, and a variance between that and the previous process would be at least seasonable for a plea in *abatement*, which must be *first* insisted on, before continuance. On an appeal from a justice to the county court, there has been a declaration, an imparlance, a judgment, and it is too late for a plea in abatement. The filing a new declaration in the county court is mere matter *in amendment*, allowed by a standing rule for the purpose of putting the matter into legal and technical form, required to avoid error in that court, but not required before a justice of the peace. If the new declaration is variant, and presenting new matter, the defendant should object to its being received ; but if rejected, the plaintiff would not be out of court, or subject to *abatement* of his suit. He might still proceed on the former declaration.—*Barber* vs. *Ripley et al.* 1 Aik. Rep. 80.

The defendant's counsel has indulged in much latitude of remark on the weight of the testimony and other matter not appearing in the bill of exceptions, and on the merits of the question of fact which was tried below ; nor is this a solitary case where counsel

BENNINGTON,
February,
1835.
Way
vs.
Wakefield.

take such a course. It should at all times be remembered, that as to all cases which come to this court, on exceptions, they are to be viewed as strictly matters *in error*, the statute having merely substituted the course of passing them on motion to this court in the place of a writ of error. Such cases cannot be treated as motions or petitions for new trials, nor calling for the exercise of judicial discretion, like the proceedings on the return of a postea in England. We cannot revise the questions of fact which were settled below, whether it was done by the jury or by the court, by the consent of parties; and this case must be treated, in this respect, like all others, and we must receive it as a fact found that the order was not received in *payment*, but taken by the witness as the agent of the defendant for his accommodation.

It is insisted that the plaintiff cannot recover on the count for goods sold and delivered, on the ground that a harness does not come within the words " goods, wares and merchandize."

At common law, *bona et catella* included all personal property; and in a declaration, copied from common law forms, money, goods and chattels will include all personal property; and in declarations, words cannot have one sense here, and another in England. Stress is laid on the sense in which the court has decided these words are used in a certain statute, fixing the *place* where certain actions are to be brought. In that case the court very properly decided the words had there a local meaning; as we should say, the word *stock*, in a contract among our farmers, had a different meaning than at Lloyd's, or the London Exchange.

It is next insisted, that as there was a special or express contract in relation to the mode of payment for this harness, the plaintiff cannot recover on the general counts in his declaration. There has formerly been much controversy and contradictory decision on this subject; but as the law is now understood, the general counts are more extensively used than formerly, both in England and this country. It was formerly considered, that wherever there was an express or special promise, all implied assumpsits were merged and superseded, and could never after be resorted to. Such is not now the doctrine. Whenever there are goods sold, work done, or money passed, whatever stipulations may have been made about the price, or mode, or time of payment, if the terms have transpired so that money has become due, the general count may be sustained. But if the contract be executory and subsisting, and the action be for the breach, for the recovery of damages, then the count must be special. This becomes of much practical importance here in rela-

BENNINGTON,
February,
1835.

Way
vs.
Wakefield,

tion to the action on book, which will lie where the general counts for work done or goods sold can be sustained. It is frequently objected that an article cannot be charged in book, and recovery be had therefor in book, because there is a particular contract in relation thereto. It is to be settled by the above rule. For instance, if A agrees to make B a plough, for which B perhaps advances part, and agrees to pay the balance in grain the next winter: If the plough is made and delivered, it is proper to charge it in book, and if the grain is not paid when due, A may sustain assumpsit, as for goods sold, or an action on book. But if the plough is not made, and B sues to recover *damages* for the breach of the contract, he must declare specially, and cannot recover in general assumpsit, or on book. It is on this principle, that a man holding a note for money, payable to himself, may, after the pay-day has expired, maintain a general count as for money. In this case, it appears the plaintiff *" sold the defendant the harness for ten dollars, and told him he would take lumber in pay."* Most obviously by the above rule, this was proper cause for a count in general assumpsit, or on book, if the time of payment had passed; and this brings us to the main question in the case. Had the time of payment passed, was the *money* due?

It is insisted that the lumber should first have been demanded by the plaintiff, before suit. This was not a contract for any specific quantity of lumber at any particular time or place or on demand. Indeed the defendant never undertook to pay lumber. It was a mere reservation of a privilege to the defendant as to the mode of payment, which he might avail himself of or not, as he pleased; but could not be compelled by the plaintiff. Transactions of this character, to a very great extent, exist in this community. Our traders and mechanics are extensively in the practice of dealing out property on credit and charging it on book under an agreement to receive produce in payment. Now in such case, it is well understood such debtor may, in its season, deliver on such debt any such produce as is usually received and marketed, to wit, pork, butter, cheese, grain, wool, &c., without the same having been designated or demanded by the creditor; and, by reciprocity, the creditor may, after reasonable time after the season for paying produce has passed, sue and collect his debt without designating or demanding produce. The debtor, by delay, has waived his privilege. In this case, the defendant, in a reasonable time, might have delivered to the plaintiff in payment, marketable lumber, without any demand or designation as to kind, by the plaintiff. But from October, 1831,

BENNINGTON, to 1834, he delayed making payment. This was a waiver of his
February,
1835.    privilege.

Way        But even if it were true that in this case the defendant was en-
vs.
Wakefield.  titled to a demand in the first instance, it is now waived. He pro-
ceeded to make his own provision for paying the lumber by an or-
der. ' Had that produced the pay, all would have been well; but
it failed, and he made no other provision. Whenever a debtor
proceeds to do a thing which he was only bound to do on notice or
demand, he can never afterwards say he had not notice or demand.
He waives the demand, or conclusively acknowledges it. The de-
fendant, by making the provision by order for the payment of the
lumber, acknowledges the same to have been designated and de-
manded. That failing to produce the pay, and he making no oth-
er provision, it is now too late to deny the demand.

Judgment affirmed.