B. H. SMALLEY *v.* JOHN R. CORLISS.

[IN CHANCERY.]

*Landlord and Tenant. Lease, Chancery.*

Under a provision in a lease of a farm upon shares, that the lessor is to have one-half of the gross proceeds of the farm in lieu of interest, "and to have as much property and value in hay, seed, teams, tools and stock returned to the lessor at the expiration of said contract as he puts on to said farm and delivers over to the lessee," it was *held,* that the lessee was bound to return the property he received, or its equivalent in value, even though the loss or depreciation was wholly without his fault.

But where a portion of the stock was disposed of during the term of the lease by mutual consent, at a price less than the appraisal when the lessee received it, and the lessor received the proceeds, the lessee is not bound to make up for the deficiency.

Rule of practice upon appeal from chancery.

APPEAL FROM CHANCERY. It appeared from the bill and answer that the orator leased his farm in Swanton for one year from the 1st of March, 1860, to the defendant upon shares ; and the orator complained that the defendant had not fulfilled certain stipulations of the lease, which the defendant denied. The lease provided that "the said farm is to be carried on and cultivated by said Corliss upon the principle that said Smalley is to furnish all the capital consisting of land, buildings, teams, seed, hay, stock and tools, now on said farm and necessary for its proper management and cultivation, and to receive one-half of the gross proceeds of said farm in lieu of interest, and to have as much property and value in hay, seed, teams, stock and tools returned to said Smalley at the expiration of said contract as he puts on to said farm and delivers over to said Corliss, and the

said Corliss is to receive the other half of said gross proceeds as a compensation for doing all the labor necessary to be done on said farm for its proper cultivation and management."

The next clause in the contract in relation to return of property is as follows :

" Said Corliss is to leave at the expiration of this contract upon said farm for the use of said Smalley, as much value in seed and grain, teams, stock and tools as he received from said Smalley."

There was also the further provision in the lease as follows :

" If after examining the crops of hay and grain and roots raised on the premises next fall said Smalley and Corliss shall be of the opinion that there is not fodder enough to keep the stock, enough of the stock is to be sold so as to reduce the stock to the quantity of fodder." The lease also provided that, "the two log houses on the west side of the road said Corliss is to have for the use of his men, if he desires it."

The case was referred to special masters to take the account between the parties. It appeared from their report in respect to the items of account in dispute, and which each party claimed under the said provisions of the lease, as follows :

The defendant received of the plaintiff under the lease on the 1st of March, 1860, thirty cows, which were worth at that time $30. each. The defendant returned to the plaintiff twenty-seven of these cows on the 1st of March, 1861, and these cows so returned were then worth $30. each, less $5.98, as hereinafter stated. One of the said thirty cows so received by the defendant died in May, 1860, of disease, without any fault of the plaintiff or defendant, and was then worth $30. Two of the thirty cows were appraised and were worth $22. each in the fall, and then fattened by materials produced on the farm, and killed by the consent of both parties, and were worth when killed, December 6th, 1860, $35., which the plaintiff received. The defendant claimed one-half of the increase by fattening said cows, which was allowed at $6.50. The plaintiff claimed the value of these two cows at the time the defendant re-received them, deducting the amount of their value when killed. His claim under the masters' finding of the value was $25., which was disallowed.

Two of the twenty-seven cows returned were farrow when returned, but not by any fault or want of care on the part of the defendant; on this account their value was, when returned, $30., and the difference between their value when received by the defendant and returned to the plaintiff was $30., which the plaintiff claimed, but the claim was disallowed.

The defendant also received of the plaintiff under said lease a horse named "Robin," worth $75. This horse when in the charge of the defendant's servant, in use on the farm, was drowned, in April, 1860, and the plaintiff claimed his value, which was not allowed.

Another horse called "Tom," depreciated in value $7. while the defendant had him under the lease, by reason of increased age, which amount the plaintiff claimed, and the claim was disallowed. And another horse called "Jack" depreciated $5. on account of increased age, which was disallowed to the plaintiff.

The defendant also received a breeding mare on the 1st of March, 1860, with foal, then worth $75., and returned her on the 1st of March, 1861, then worth twenty dollars less on account of her not being with foal, but she was without foal by no fault of the defendant, and the claim for depreciation in value was disallowed.

One two-year-old heifer died in June, 1860, by accident, without fault of the plaintiff or the defendant. She was then worth $13., which the plaintiff claimed, and the claim was disallowed, except her hide, valued at $2.93.

Twenty-four head of young stock were sold in the fall of 1860 by the plaintiff, (who received the money), on account of a deficiency of forage on the farm to keep them with other stock not sold, and so sold without the consent of the defendant. They were sold for $42. less than their value when the defendant received them. Both parties agreed in the fall of 1860 that there was not fodder enough on the farm to keep the stock, but they could not agree what stock should be sold, and thereupon the plaintiff took the responsibility of selling as aforesaid. No more stock was sold, including all that was sold, than was necessary to adapt the fodder to the stock retained. The defendant insisted that some of the cows should be sold in lieu of the young stock that was sold. The plaintiff claimed for the loss of the $42., which was disallowed.

The defendant received a three-year-old bull, worth $25., and he was sold by consent of both parties in the fall of 1860 for $15., which was his worth then. The plaintiff claimed for the difference, which was disallowed.

The masters also allowed the plaintiff's items, Nos. 36 and 37, $6. each, for garden spots and firewood for two hired men of the defendant, "Levi" and "Jerry."

The orator excepted to the masters' report because they allowed to the defendant the item numbered 18 in the defendant's account at $6.50, for fattening two cows; and because they disallowed the orator's claims for—

1. The value of the cow that died in May, 1860,   $30.00.
2. The difference in value between the two cows that were fattened, when returned to the orator and when received from him,   25.00.
3. The difference in value between the two farrow cows of the twenty-seven cows returned, when received by Corliss and when returned to Smalley,   30.00.
4. The value of the horse "Robin" that was drowned,   75.00.
5. The depreciation of the horse "Tom" on account of age,   7.00.
6. The depreciation of "Jack" on account of age,   5.00.
7. The difference in value of the breeding mare when received and when returned,   20.00.
8. Loss on stock sold in fall of 1860 for the want of sufficient forage,   42.00.
9. Loss of two-year-old heifer that died,   10.07.
10. Loss on bull sold,   10.00.

The orator claimed that the foregoing items should have been allowed him by virtue of the aforesaid provision in the lease; that by the true construction of the lease the defendant was bound to return to the plaintiff at the expiration of the lease an amount *in value* of hay, seed, teams, tools and stock equal to the amount in value of the same articles put on to the farm and delivered to the defendant.

The defendant denied that this was the true meaning of the lease, and claimed that if the same property that was received was re-

32

turned, and the difference in value was caused by increase of age or other causes over which he had no control, and for which he was in no fault; or if he was prevented from returning the animals received by their death from natural disease or inevitable accident, the defendant being in no fault therefor,—then he ought not to be charged for their value or the difference in value; and that these items in the orator's account came under this head and were therefore properly disallowed.

The chancellor considered that the proper construction of the lease was as the orator claimed it to be; that the items herein-before stated, as follows: No. 1, at $30.; No. 2, at $25.; No. 3, at $30.; No. 4, at $75.; No. 5, at $7.; No. 6, at $5.; No. 7, at $20.; No. 9, at $10.07.; No. 10, at $10., ought by this construction of the lease to be allowed to the orator. No. 8, at $42., was properly disallowed.

The chancellor also disallowed the $6.50, (item 18 of the defendant's account, for the increase on two cows fattened.)

The only exception taken by the defendant to the report was for the allowance of items 36 and 37, each for $6., which the chancellor disallowed.

————, for the orator.

*H. C. Royce* and *H. A. Burt*, for the defendant.

Poland, Ch. J. 1. The first and principal question is as to the construction of the lease from the orator to the defendant.

The lease provides that Smalley is to have one-half of the gross proceeds of said farm in lieu of interest, "and to have as much property and value in hay, seed, teams, tools and stock returned to said Smalley at the expiration of said contract as he puts on to said farm and delivers over to said Corliss." And it is again repeated in the lease, "said Corliss is to leave at the expiration of this contract upon said farm for the use of said Smalley, as much value in seed and grain, team, stock and tools as he receives from the said Smalley."

It is not claimed but that in a contract for the leasing of a farm and the stock upon it, it is perfectly competent for the parties to contract that the tenant shall insure to the landlord the return of all the stock or other property on the farm, or its value, even though it may

be lost, or depreciate in value, without any fault on his part, or by inevitable accident.

It is claimed, however, by the defendant, that such stipulation is so unusual in this class of contracts, and operates so severely upon the defendant in this case, that the language used, and quoted above, should not be construed to mean this, but only to throw upon the defendant, in case of any loss or depreciation, the burthen of proving that it was occasioned without his fault. But it appears to us that the language of the contract is so clear and distinct, and so entirely unequivocal in its meaning, that no room is afforded for a construction any more favorable to the defendant, than that he bound himself to return the property he received, or its equivalent in value, even though the loss or depreciation was wholly without fault of his. Nor have we been able to see that the clauses above cited are so controlled or modified by other provisions and clauses of the lease as to vary this plain signification.

This was the construction given to the lease by the chancellor, and his allowances of items in the orator's account, which were objected to by the defendant, we regard as correct, with two exceptions. These are the charges of $25. for the loss on the two cows fattened and killed, and $10. for loss on the bull sold. The masters' report states that by the mutual agreement of both parties the cows were fattened and killed in the fall of 1860, and produced but $35. which the orator had, though their value the spring before was $60.

The bull was worth $25. in the spring, but by mutual agreement he was sold in the fall for but $15.

The chancellor allowed to the orator his charges for these losses as properly recoverable under this provision of the lease. It seems to us this allowance was improper.

This disposition of the two cows and bull, clearly excused the defendant from restoring them to the orator at the end of the term, and, as we think, from returning any equivalent for them then. In effect it took them out of the contract of lease, and made a new contract as to them, and another and different disposition of them. We cannot say but this disposition of these animals at these prices was more beneficial to the orator than to have had them kept until spring and then returned to him. Nor can we say but such new disposi-

tion was more detrimental to the defendant than it would have been to have fulfilled his original agreement as to them.

Each party ran his own risk as to making or losing by this new and different arrangement as to these animals, and as that new arrangement was perfected and carried out, neither can resort to the original provision in the lease governing them.

The chancellor's decree disallows two items of the orator's account, Nos. 36 and 37, of $6. each, "for garden spots and firewood for Levi," and "same for Jerry."

The lease makes no provision that the defendant's hired men or tenants are to be furnished with firewood and gardens without charge, and as the masters find that they had such from the orator, these should have been allowed.

The orator also objects to the allowance of two items in the defendant's account,—No. 4, for work, allowed by masters at $34.50, and No. 26, for hay and straw left on the place, allowed at $50. But we think these items are not properly open to revision here. It is true that an appeal of a chancery suit brings the whole case before this court, as it stood before the chancellor, and the court may as properly vary the decree against the party appealing as in his favor. But on an appeal, this court takes the place of the chancellor, and when it would not be proper for the chancellor to disturb an allowance of masters at the hearing before him, it would be equally the duty of this court not to do so. When an account has been taken and returned by a master, regularly, either party desiring to object to the allowance of any item should file his exceptions to the masters' report, specifying the items objected to, and the grounds of objection. On hearing, it is not the duty of the chancellor to examine items not thus excepted to, and on appeal the duty of this court does not extend beyond that of the chancellor.

In this case no written exceptions were filed, but at the hearing before the chancellor, each party excepted orally to such allowances as the masters had made which he was dissatisfied with, and all these exceptions were stated in the chancellor's decree. The chancellor was not bound to examine any items that were not thus excepted to, and on appeal from his decree, the hearing must have the same limitation.

The chancellor's decree is reversed, and the case remanded, with directions to disallow in the plaintiff's account, said item of $25. for "loss on two cows fattened," and the item of $10. for "loss on bull," and to allow to the plaintiff the two items of $6. each for firewood and gardens for hired men, and to allow the residue of accounts as in former decree, and make decree accordingly.