WALTER W. HUNKINS *v.* THE TOWN OF JOHNSON.

*Soldier's Bounty.    Authority of Selectmen.    Towns.*

Under an open offer, by vote of a town to pay bounties to those who enlist and are mustered into service to fill the quota of the town under a certain call, they who first accept the offer, and comply with its terms, in number sufficient to fill the quota, exhaust it; and the true date of muster, and not the date of the muster-roll, governs as to who seasonably comply with the offer, to entitle them to the bounty.

One selectman cannot bind the town by a contract made by him without the knowledge or consent of the other selectmen.

Neither can the town be bound by such contract by estoppel, any more than by the proper vigor of the contract itself.

ASSUMPSIT to recover a town bounty. Plea, the general issue, and trial by jury, December term, 1870, Lamoille county, RED-FIELD, J. presiding.

The plaintiff offered in evidence a certified copy of the record of the warning of a town meeting, and of the proceedings of a meeting of the defendant town held thereunder on the 19th of December, 1863. The warning was:

"2d. To see whether the town will vote bounties to supply the quota of said town under the recent call of the president of the United States for 300,000 men to serve in the war.

"3d. In case the town shall vote to pay such bounties, to raise and provide means for the same."

The vote at said meeting was:

"That the selectmen be instructed to borrow a sum not exceeding $3000, for the purpose of paying $300 each to volunteers that may hereafter enlist for the war under the recent call of the president of the United States, including the one that it is understood has enlisted ; payment to be made to such enlisted men when mustered into the service of the United States.

"That the selectmen be authorized and instructed to raise a tax sufficient to meet one-third of the amount to be raised as aforesaid, to be raised on the list of 1863, and the remainder to be raised by tax in two equal installments, on the lists of 1864 and 1865; the first named tax to be raised in the month of January next."

The defendant objected to the admission of said copy of record, because the proceedings of said meeting were not warranted by the warning; but the court overruled the objection, and admitted the same ; to which the defendant excepted. The plaintiff also introduced a certified copy from the records of the adjutant general's office, showing that the quota of the defendant under the call of October 17, 1863, was twenty men, and that at that date the defendant had a credit of twenty-four men for a surplus furnished under previous calls. The plaintiff also introduced a copy from said last named records, of town credits by name, from which it appeared that the plaintiff re-enlisted in Co. K, 8th Reg't, Vt. Volunteers, on the 5th of January, 1864, to the credit of the defendant, but that said credit was not received and entered on the books of the adjutant general's office till some time in April, 1864. The plaintiff introduced one John Mudgett as a witness, who testified that after the warning of said town meeting, but before the same was held, he had a conversation with Merriam, then one of the selectmen of the defendant town, in which Merriam said that a town meeting had been called, and that the town would undoubtedly vote a bounty of $300 to fill the quota; that experienced men were more serviceable to the government than raw recruits ;

that they wanted recruits ; that he wanted the witness to write his son, who was then in the service, to have him, and others of his acquaintance, re-enlist; that in accordance with such request, the witness wrote his son, and afterwards received a letter from him that he, and others, among whom was the plaintiff, had re-enlisted in the field ; that the witness communicated the contents of said letter to Merriam, and Merriam replied that he had heard of their re-enlistment before, and was glad of it ; that the date of this last conversation was about the middle of January, 1864, and might have been as late as the 20th ; and that he communicated to his son, Merriam's reply to this notice. The plaintiff also introduced one George E. Mudgett as a witness, who testified that he was a son of the said John Mudgett, and belonged to the same regiment as the plaintiff ; that he received a letter from his father, which was lost, wherein his father stated that he wrote at the request of Merriam, one of the selectmen of Johnson, that the warning for a town meeting was then up, and there was no doubt but the town would vote to pay a bounty of $300 ; and that Merriam wanted the witness, and his friends, to help all they could, and re-enlist for their town ; that he communicated the contents of this letter to the plaintiff, and others ; that he received another letter from his father, stating that the town had voted a bounty of $300, and that immediately after his, and the plaintiff's, re-enlistment, he wrote his father that he and the plaintiff, with others, had re-enlisted. The witness also testified that it must have been very near February when he got the last named letter from his father ; that he and the plaintiff came home on their veteran furlough in April, and while at home, they had a talk with Merriam and one Riddle, who was then one of the selectmen of the town. It appeared that at the time of this last named talk with Merriam, he was not one of the selectmen. The witness further testified that he and the plaintiff applied to Riddle for payment of their bounty, and Riddle told them the town was embarrassed for funds, but that they should each have $300, the same as the town had paid the new recruits that had enlisted ; that they afterwards applied to Riddle for the money, and he told them they should have it, with interest, as soon as they returned. The plaintiff

testified that he re-enlisted in Co. K, 8th Reg't Vt. Volunteers, on the 5th of January, 1864, at New Iberia, La. ; that George E. Mudgett showed him a letter from his father, stating that the town was paying a bounty of $300, and wanted them to re-enlist, and that he re-enlisted, relying upon, and expecting to receive, the bounty; that he came home in April, and he and Mudgett had a conversation with said Riddle, in which Riddle said they were paying a bounty of $300, and wanted them, and would pay them $300 ; that the witness' captain, at his request, notified the town of his re-enlistment, but ·he did not know in what way he gave the notice. On cross-examination the plaintiff stated that he had no conversation or communication with either of the other selectmen relating to his claim for bounty. It appeared from the testimony on the part of the plaintiff, that the plaintiff's regiment was ready for muster on the 5th of January, but that, for want of a mustering officer, and without fault of the soldiers re-enlisting, the muster was delayed ; but that it was the understanding of the officers and soldiers that the muster-in should date back to the 5th of January ; and that the muster-in did take effect as of that date, accordingly ; and that the plaintiff was in actual service in his company, doing duty, and subjected to military control, from his re-enlistment to his muster. There was ·no evidence in the case tending to show that either Merriam, or Riddle, were authorized by the other selectmen to make any promises, or give any assurances in behalf of the town; nor that what they did in the matter was by their authority, or with their consent, or had ever been communicated to them; nor was there anything, except what might be inferred from their language above detailed, to show that either Merriam or Riddle was acting, or assuming to act, in their official capacity. It appeared from the testimony on the part of the defendant, and was conceded by the plaintiff, that the true date of 'the plaintiff's muster, was the 15th of March, 1864, but that it was to take effect as of January 5th, 1864. It also appeared that the plaintiff's original muster was February 18, 1863, and the term of his first enlistment, three years ; but that by a special order from the War Department, all soldiers of the 8th Vt. Reg't were permitted to re-enlist and be mustered on

the 5th of January, 1864. It appeared from General Order No. 2, dated November 2, 1863, issued by the adjutant general of the state, and promulgated to the several towns the same month, that the defendant's quota under the call of October 17, 1863, was nothing; but that there was a deficiency under the draft, of ten men, and that the aggregate due from the town according to that order, was ten men. The defendant's quota February 1, 1864, under a call for 200,000 men, was ten, and the town was credited on the adjutant general's books, under date of February 27, 1864, "for result of draft in 1863," twelve men. Ten men enlisted to the credit of the defendant between the 11th of December, 1863, and the 1st of January, 1864; two of whom were mustered before the 5th of said January, and the others, on the 12th. Nine men re-enlisted into the 17th Reg't, and were mustered to the credit of the town on the 24th of February, 1864, and seven others enlisted into the same regiment and were mustered to the credit of the town on the 2d of March, 1864. It was conceded, that at the time of said town meeting, the town had been informed by the adjutant general of the state, and supposed, that their quota under the call of October 17, 1863, was ten men, and that they acted upon that supposition. After the close of the testimony, the court inquired of counsel whether any question was to be made of the fact that the plaintiff re-enlisted at the request, and upon the inducement, of said Merriam, in the manner stated by the plaintiff's witnesses; or that the plaintiff's actual muster-in was on the 15th of March, 1864, and that the delay was solely for the want of a mustering officer, and that, by arrangement with the military officers having charge of that matter, the muster-in was to, and did, take effect as of January 5, 1864. The counsel on both sides declining to go the jury on these, or any other facts in the case, the court directed a verdict for the plaintiff for $300 and interest; to which the defendant excepted.

*M. O. Heath* and *Benton & Irish*, for the defendant.

*Brigham & Waterman*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. It appeared, and it was conceded by plaintiff's counsel, that the plaintiff was in fact mustered in March 15th, 1864. By the terms of the vote, he could not be entitled to claim the bounty till he had been mustered in. So, in this respect, the dating back that event to the 5th of January on the muster-in roll, could not affect his right prior to the fact of muster-in to claim and have the bounty. Prior to that, the provision made by the vote of the town had been exhausted in paying men who had been mustered in and filled the quota provided for in the vote. In order to entitle a party to enforce an open offer, he must show that he has brought himself within the legal effect of such offer. In this case it was limited to ten men. Of course it would be exhausted by the ten men who should first accept and comply with its terms. The plaintiff failed, through no fault of the town, to be one of that number. He cannot maintain his action on that ground.

There is no occasion to discuss the question of the validity of that vote, that question having been settled in the case of *Mudgett* v. *Johnson*, 42 Vt. 423. Nor is there occasion to discuss any question of construction, for the limit and application of the vote are obvious on its face. In this respect the question is, whether plaintiff comes within the operation of it, by reason of having accepted the offer made by such vote.

The other ground of claim made in behalf of the plaintiff, cannot be maintained, for the record states that there was no evidence tending to show that either of the selectmen named by the plaintiff was authorized by the other selectmen to make any promises, or give any assurances, in behalf of the town, &c. This is the ground established by the evidence in *Mudgett* v. *Johnson*, on which, in that case, the plaintiff prevailed. There is nothing shown in this case from which any legitimate inference could be drawn, that any other of the selectmen were consenting to, or were cognizant of, what was being done by Merriam in respect to the enlistment of the plaintiff. This is matter of fact, necessary to be established by proof. The same is true as to Merriam's successor, Mr. Riddle.

The case lacks essential elements in order to bind the town by *estoppel*. The town could no more be subjected to liability in this way, by virtue of what Merriam alone undertook to do, than by the proper vigor of a contract in that behalf, negotiated by him alone, in his office and character as selectman.

Judgment reversed and cause remanded.