MITCHELL GOSLANT *v.* TOWN OF CALAIS.

November Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 7, 1916.

*Bailment—Liability of Bailee for Hire—Towns—Liability for Contracts of Road Commissioner—Hiring Horse for Road Machine—Authority of Road Commissioner to Settle—To Issue Town Orders—Conclusiveness of Order—Right of Action on Road Commissioner's Order—Exhaustion of Funds—Refusal of Selectmen to Provide—Objection to Evidence—Necessity—Action by Selectmen Separately— Effect—Instruction—Construction—"Could"—Damages in Action on Road Commissioner's Order.*

In the absence of a special contract fixing the degree of care to be exercised by a bailee for hire, he is liable for injury to the property only in case it results from his failure to exercise due care in its use and preservation.

A bailee for hire may, by special contract, enlarge or restrict his implied obligation to be liable for injury to the property only in case it results from his failure to exercise due care in its use and preservation.

Under P. S. 3958, providing that the town road commissioner shall superintend the expenditure of the highway tax and have charge of keeping in repair the highways in his town, where a road commissioner hired plaintiff's horse for use on the road machine, expressly agreeing to return the horse in as good condition as received, the town was bound by that contract and was liable for any deterioration in the horse during the bailment, regardless of whether it was owing to the road commissioner's negligence.

In addition to the powers expressly given a road commissioner by P. S. 3958, he has such further powers as are necessary for the efficient exercise of the powers expressly granted, or as may fairly be implied from that statute.

The unrestricted power of a .road commissioner to hire a horse for use on the road machine and to contract to return him in as good condition as received included by implication the right to settle and adjust all disputes concerning an injury to the animal during the bailment; and, in the absence of fraud, such settlement and adjustment, made by him with the owner by a town order drawn to the latter's order, is conclusive and binding on the town; and that expenditure was, in contemplation of law, money expended on the highways, and so authorized by P. S. 3960, as amended by No. 126, Acts 1910, providing that all money expended on highways shall be drawn from the town treasury upon the order of the road commissioner.

Since P. S. 3960 as amended by No. 126, Acts 1910, provides that a person in whose favor a town road commissioner's order for money expended on the highways is drawn shall, before receiving the amount, duly indorse the order, where plaintiff let his horse for use on the town road machine, under a contract with the road commissioner, and presented to the town treasurer, duly indorsed, the road commissioner's authorized order for a sum of money to cover the deterioration in the animal, and plaintiff had fully performed his part of said contract, he could maintain general assumpsit against the town for the amount of the order upon refusal of payment.

Under P. S. 3958, providing that a town shall not be chargeable with the expense of repairing its highways after the road commissioner notifies a selectman that the money appropriated by the town for the repair of highways is exhausted, unless incurred under the direction of the selectmen, a town is not relieved from liability on its road commissioner's order, settling for deterioration in a horse hired for use on the road machine, under an agreement to return in as good condition as received, made when the highway repair funds were not exhausted, though they were exhausted when the order was presented for payment.

An exceptor to the admission of evidence will be confined on review to the objection he made below.

Nothing said by selectmen severally, each acting independently of any of the others, can affect the town.

Erroneous instructions more favorable to an exceptor than those to
  which he was entitled were harmless to him, and so no ground for
  reversal.

In general assumpsit against a town to recover the amount of an order
  drawn by its road commissioner, an instruction that if the select-
  men directed the treasurer to pay all orders drawn by the road
  commissioner, except the one in suit, and they were so paid, and
  there was left a fund "which could have been applied to the pay-
  ment of this order, then it was proper" so to apply it, was proper,
  as the word "could," as used, meant "could lawfully."

In general assumpsit against a town to recover the amount of an order
  drawn by its road commissioner in favor of plaintiff and in settle-
  ment for the deterioration in his horse that he had let to the road
  commissioner for use on the road machine, under the latter's
  authorized agreement to return the horse in as good condition as
  received, the measure of damages was the amount of the order, in-
  cluding interest, and not the value of the horse, for the road com-
  missioner's settlement with plaintiff was binding on the town.


  GENERAL ASSUMPSIT. Plea, the general issue. Trial by
jury at the March Term, 1915, Washington County, *Stanton,* J.,
presiding. Verdict and judgment for the plaintiff. The de-
fendant excepted.

  The plaintiff seeks to recover upon a town order for the
sum of two hundred dollars, drawn in his favor by the road
commissioner of the defendant town. The order is dated
September 7, 1912, and the body of it reads as follows:

  "The treasurer of the town of Calais, Vt., is directed to pay
to M. Goslant or order two hundred dollars, it being for one bay
horse used on road machine, became lame, run down and worth-
less."

  It appeared from the evidence that in the spring of 1912, the
road commissioner of defendant town hired four horses of the
plaintiff to use on the road machine in repairing the highways
in the town. The plaintiff's evidence tended to show that the
road commissioner took them under an agreement to pay one
dollar per day for each horse during the time he kept them,
(Sundays excepted,) keep them well shod, and return them in as
good condition as he got them; that when they were taken under
the contract, one, a bay horse, was eight years old, weighed
sixteen hundred pounds, not injured in any way, "all in good

condition, and fat as a pig,'' and considered worth three hundred dollars; that on July 6, 1912, the road commissioner returned to the plaintiff all the horses so hired, except this bay horse which the commissioner claimed got hurt when working on the road, and was not so he could be taken home at that time, but that he would be returned as soon as his condition was sufficiently improved; that this horse was returned six weeks later in a very lame, run-down condition—in such bad shape that thereafter, some of the time, he could not use one of his legs, and finally died. Defendant's evidence tended to show the contract of hire to be, that the plaintiff should receive one dollar per day for each horse, rain or shine, (except Sundays,) from the day they were taken until returned home, and that they should be well fed and not be brought back "skin and bones''; that one morning the bay horse in question started work apparently in good condition, but, about the middle of the forenoon, began to go lame; that the road machine, then one and a half or two miles from the stables, was taken back there, the horse growing lamer; that after reaching the stables, the horse was not worked any more; that there was no accident of any nature to the horse, but there was a sore place in his leg which evidently caused the lameness, though neither the skin nor the flesh was broken; that this horse was one of six used in drawing the road machine, being one of the middle pair; that on account of the sickness, the horse was not immediately returned to the plaintiff, but was cared for by the road commissioner and by a veterinary until returned.

The plaintiff introduced evidence tending to show that the condition of this horse was suppurated synovitis, an infection in the leg caused by some foreign substance getting into a wound, bruise, or sprain; that it was possible for this to start from a horse being calked. But the plaintiff introduced no evidence tending to show when the horse received an injury from which this condition started, or as to when infection took place; and there was no evidence of negligence or fault on the part of the defendant or its servants or agents, and no question on such an issue was submitted to the jury.

The plaintiff received pay for the use of all the horses up to the time when the three others were redelivered. The plaintiff's evidence further tended to show that at the time the bay horse was returned, the plaintiff told the road commissioner that

he ought to have two hundred dollars for that horse; that later the road commissioner, at different times and places, interviewed severally the selectmen of the town regarding the matter, but failed to get much light from them: they severally said that the commissioner hired the horse, and expressed the opinion that probably it would be better in the end to settle for him, or words to that effect. Later the road commissioner gave to the plaintiff, the order in question, in settlement for the injury to, and the run-down condition of, the horse. This order was sent by the plaintiff to the town treasurer, the latter returning it, stating that it lacked the plaintiff's endorsement, and that before its receipt, the funds appropriated for the use of the road commissioner were exhausted, referring the plaintiff to the selectmen of Calais for settlement. Thereupon the plaintiff endorsed the order and again sent it to the town treasurer, saying he did not know who the selectmen were, and requesting him to hand the order to them. The treasurer, understanding that the town highway funds had been exhausted, applied to the selectmen to authorize payment of the order, but they refused and forbade its payment. The order was never returned to the plaintiff, and was never paid.

*H. C. Shurtleff* for the defendant.

*Fred L. Laird* and *Edward H. Deavitt* for the plaintiff.

WATSON, J. At the close of the evidence, defendant moved for a directed verdict, assigning reasons therefor in thirteen different clauses. But it is not necessary to notice particularly all these clauses, since the three following involve substantially all questions of law presented by the exception to the overruling of the motion: (1) the road commissioner could not bind the town by a contract such as the plaintiff's evidence tended to show, (meaning, we suppose, that part by which the horses were to be returned in as good condition as when taken); (2) the road commissioner could not bind the town by giving the order in question; and (3) general assumpsit will not lie for injury to the horse.

By statute the town road commissioner is the officer of the town to superintend the expenditure of the highway tax, and to that extent, without doubt, to have charge of keeping in repair

the highways of the town, and for any damage sustained by the town by reason of his fault or negligence in the performance of such duties, he is responsible. P. S. 3958. In addition to the powers thus expressly given, he has such further powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers. Throop on Public Officers, Sec. 542; *Douglass & Varnum* v. *Village of Morrisville,* 89 Vt. 393, 95 Atl. 810.

It is not contended, nor could it well be, but that for the purpose of repairing the highways, the road commissioner had the power to make contracts for the employment of labor, and for the use of a suitable team to work on the road machine. But it is urged that he was not empowered to make a contract, hiring horses for that purpose, by which they were to be returned at the termination of the use, in as good condition as they were when taken, as was the contract shown by the plaintiff's evidence. In the absence of a special contract, fixing the degree or care to be exercised by a bailee for hire, he is liable for injury to the property only in case it results from his failure to exercise due care and diligence. in its use and preservation. *Malaney* v. *Taft,* 60 Vt. 571, 15 Atl. 326, 6 Am. St. Rep. 135; *Gleason* v. *Beers' Estate,* 59 Vt. 581, 10 Atl. 86, 59 Am. Rep. 757. But bailees of this class may, by special contract, enlarge or restrict the obligation that would otherwise by implication of law be imposed upon them. This was expressly held in *Ames & Co.* v. *Melendy,* 64 Vt. 554, 24 Atl. 1052. The action in that case was general assumpsit. The defendant's second plea alleged in substance that the plaintiff was the owner of a saw mill situated upon the banks of the Connecticut river, at which he did custom sawing; that the defendant owned a quantity of logs upon the bank of the river above the plaintiff's mill, which he desired to have sawed; that it was agreed between the parties that the defendant should roll his logs into the river and notify the plaintiff thereof, who should thereupon stretch a boom across the river and stop and keep said logs until they were sawed; that defendant did roll his logs into the river and notify the plaintiff, but that the plaintiff's boom broke, whereby the logs were lost. Defendant's third plea was like the second, except that it alleged that the defendant delivered the logs to the plaintiff where they were rolled into the river. In neither

plea was there any allegation of negligence by the plaintiff in making or maintaining the boom. The case stood on demurrer to these pleas. It was contended in behalf of the plaintiff that in such a bailment, in order to make the bailee liable, negligence must be alleged and proved. It was held that the pleas declared upon a special undertaking, one that was absolute and unconditional, one that could have been broken by the plaintiff without negligence on his part, and therefore the allegation of negligence was not essential to the assignment of a good breach of it. The demurrer was overruled. In *Grady* v. *Schweinler,* 16 N. D. 452, 113 N. W. 1031, 14 L. R. A. (N. S.) 1089, 125 Am. St. Rep. 674, 15 Ann. Cas. 161, the defendant received the plaintiff's stallion for use as a stock horse, under a contract for hire, agreeing to return the horse in as good shape as when taken, or better, and if he did not, he would pay for him. The defendant contended that the horse died during the term of bailment, without any fault or negligence on defendant's part, and consequently he was not liable. It was held that the relative rights of the parties must be determined from the contract, and not by the general rules of liability under the law of bailments; that the language of the contract was positive and unequivocal, and permitted of no exception, but implied an unconditional liability if the horse could not be returned. In *Laughren* v. *Barnard,* 115 Minn. 276, 132 N. W. 301, it was held that the contract for the lease of certain horses for a specified period, which expressly provided that they should be returned in the same condition as when received, or as good, imposed upon the lessee, not merely to exercise reasonable care of the horses, but an absolute obligation to return them in as good condition as they were when taken. Fundamentally to the same effect is *Smalley* v. *Corliss,* 37 Vt. 486.

In the case at bar, the evidence showed that the road commissioner had horses of the plaintiff the year before, for the same purpose, under a similar contract. It may be that, considering the nature of the work, the length of time usually required in its performance, and the fact that the feeding, use, and care of the horses, were to be by persons not the owner or his representatives, it was not easy to procure a suitable team by hire, unless the contract contained special provisions enlarging the liability of the hirer from what it would otherwise be. We see no good reason why such a contract as the one shown

by the plaintiff's evidence, may not be made by the road commissioner of a town in the proper performance of his duties, and if so made by him, in good faith, and fully acted upon by both parties, as in this case, we know of no law by which the town can escape the responsibility. Whether a town will have a team of its own for the purpose of such work, or depend upon hire, is a matter of practical public economy, and if it adopts the latter course it is bound by any contract of hire made by the road commissioner of the town, reasonably necessary to the due and efficient performance of the work to be done.

The unrestricted power in the road commissioner to make the contract in question, included by implication the right to settle and adjust all dispute arising concerning it; and, in the absence of fraud, the settlement made by him with the plaintiff, for failure to return the bay horse in the condition required by the terms of the contract, is conclusive and binding upon the town. *Billings* v. *Kneen,* 57 Vt. 428; *Todd* v. *Birdsall,* 1 Cow. 260, 13 Am. Dec. 522; *Supervisor* v. *Stimson,* 4 Hill, 136; Throop on Public Officers, Sec. 544. See *Burton* v. *City of Rutland,* 87 Vt. 224, 88 Atl. 729. It follows that the sum due to the plaintiff by the terms of such settlement, was, in contemplation of law, money expended upon the highways, as much so as the regular per diem paid for the use of the horses, and it falls within the provisions of the statute directing the road commissioner to draw an order on the town treasurer to pay the party entitled thereto. P. S. 3960 as amended by No. 126, Laws of 1910.

The section of the statute last cited, provides that the person in whose favor such order is drawn shall duly endorse the order, before receiving the amount of the same. So when the plaintiff presented the order in question, duly indorsed, to the treasurer of the town for payment, and its payment was refused, the cause of action against the town was complete. The plaintiff had performed his part of the special contract, and the sum due him (for failure to redeliver the bay horse in the condition specified in the contract) had been agreed upon between him and the road commissioner, so that nothing remained to be done except for the defendant to pay the sum for which the order was given. In these circumstances, general assumpsit will lie. *Way* v. *Wakefield,* 7 Vt. 223; *Royalton* v. *Royalton & W. Turnpike Co.,* 14 Vt. 311; *Mattocks* v. *Lyman,* 16 Vt. 113;

*Bradley* v. *Phillips,* 52 Vt. 517; *Warren* v. *Caryl,* 61 Vt. 331, 17 Atl. 741.

The motion for a directed verdict was properly overruled.

It is said that when the order was presented for payment, the funds appropriated for the repairs of highways were exhausted. Assume this to be so, they were not exhausted when the contract with the plaintiff was entered into, and the statute upon which defendant relies in this respect, (P. S. 3958,) does not relieve the town from liability thereon. This statute provides, in part, that "when the road commissioner has expended the money appropriated by the town for the repair of highways, and the amount thereof is not sufficient to complete the ordinary repairs of such highways, he shall notify one of the selectmen of such insufficiency, * * * * The town, after the giving of such notice, shall not be chargeable with the expense of the ordinary repairs of its highways unless incurred under the direction of the selectmen." Reliance is placed upon the last sentence quoted. Yet that is only to the effect that the town shall not be chargeable with the expense of such repairs made after such notice to the selectmen, unless incurred under their direction. It has no reference to expense of repairs made by the road commissioner before giving such notice and at a time when, by statute, he is bound to act irrespective of the selectmen.

The plaintiff testified to the three horses being returned by the road commissioner. His counsel then offered to show that the road commissioner said he could not take the other horse home, and that later he would take the horse back and settle with the plaintiff for the use of the horse and the injury to him by way of being run down. The offer was admitted subject to objection and exception on the ground that no recovery for injury to the horse could be had in this action. The witness then stated that the road commissioner said the horse got hurt on the road, and he was unable to take him home, etc. It is now said that it was error to allow the plaintiff to testify to the statement of the commissioner that the horse got hurt on the road, that such a declaration could not bind the town. This objection was not made below, and it is not considered. The objection there made is not briefed.

The record shows that before making the settlement with the plaintiff, the road commissioner talked with the several selectmen of the town concerning the matter, but that at no time did

he have talk with them about it when they, or a majority of them, were together; that they severally told the commissioner that he had hired the horse, and expressed the opinion that probably it would be better in the end to settle for it. The defendant requested the court to charge that the selectmen had the right to refuse to provide funds for the payment of the order in question. Such a charge in substance was given, with a modification, however, that it would not apply if the jury should find that the settlement with the plaintiff was made by the direction of the selectmen, in which event the order would bind the town, and they would have no right to refuse to pay it. Exception was saved to the refusal of the court to charge as requested, and to the charge as given. As seen from what we have already said, the validity of the order and the defendant's liability thereon, do not depend upon such direction by the selectmen; and their refusal to provide funds with which to pay it does not defeat the plaintiff's right of recovery. The settlement made was one within the province of the road commissioner alone, and advice or direction from the selectmen looking toward it, could add nothing to its legal effect. Moreover, nothing said by the selectmen severally, each acting independently of the others or either of them, could affect the town. P. S. 3; *Hodges* v. *Thacher*, 23 Vt. 455; *First National Bank* v. *Mount Tabor*, 52 Vt. 87, 36 Am. Rep. 734; *In re Thorpe*, 64 Vt. 398, 24 Atl. 991; *Town of St. George* v. *Tilley*, 87 Vt. 427, 89 Atl. 474. There was no evidence that any one of the selectmen, in saying what he did to the road commissioner, was acting under authority from the other two. See *Mudgett* v. *Johnson*, 42 Vt. 423; *Hunkins* v. *Johnson*, 45 Vt. 131. The request was unsound in principle, as were also the instructions given on the subject-matter of the request. But the instructions were more favorable to the defendant than it was entitled to have them. Consequently the error was without prejudice to the exceptor, and forms no basis for a reversal. *Erwin* v. *Stafford*, 45 Vt. 390. This disposes of exceptions 1, 2, 4, 5, 6, and 7 to the charge.

The court called the attention of the jury to the claim of defendant's counsel that at the time the order in suit was drawn, there was an excess of expenditures over actual appropriation for the repairs of highways, to an amount named; but that plaintiff's counsel claimed otherwise, referring to the evi-

dence.   The court then instructed the jury that if the selectmen gave directions to the treasurer to pay all orders drawn by the road commissioner except this one to the plaintiff, and they were so paid, and if there was left a fund "which could have been applied to the payment of this order, then it was proper" so to apply it.   To this defendant excepted.   Saying nothing of the fact that this question had no bearing on the plaintiff's right of recovery, the exception is without merit.   The word "could" as there used by the court means the same as "could lawfully," and when so understood, the conclusion of the court inevitably follows.   This is much like the holding in *Solomon* v. *Mulliner*, 83 L. T. Rep. 493, where the words "which could have been commenced in the county court" were read by the Master of the Rolls as meaning "properly commenced."

Exception was taken to the charge that the amount of the order (which included interest thereon) was the measure of damages, and it is urged that the value of the horse was the true measure.   This position is untenable: it overlooks the binding effect of the acts of the road commissioner in adjusting the matter with the plaintiff and giving the order accordingly.

The foregoing in effect disposes of all the exceptions upon which defendant relies in its brief..

*Judgment affirmed.*